**ESTATE OF HOHLER, Appellant,**

v.

**HOHLER, Appellee.**

[Cite as *Estate of Hohler v. Hohler,* 185 Ohio App.3d 420, 2009-Ohio-7013.]

Court of Appeals of Ohio,
Seventh District, Carroll County.

No. 09 CA 860.

Decided Dec. 31, 2009.

John Murphy Jr. and Kristen Moore, for appellant.

Richard Gibbs and Brian Layman, for appellee.

---

VUKOVICH, Presiding Judge.

{¶ 1} Plaintiff-appellant, the estate of Richard Hohler, appeals the decision of the Carroll County Probate Court entered in favor of defendant-appellee, Roxanne Keiffer Hohler, who is the surviving spouse. Specifically, the court ordered the decedent's attorney, who had drafted a prenuptial agreement for the decedent, to testify at deposition and to bring with him all files of the decedent. The trial court found that the surviving spouse's waiver of the decedent's attorney-client privilege under R.C. 2317.02(A) had no limits; the court did not discuss the estate's argument concerning work product.

{¶ 2} We hold that the trial court was correct in finding that a court has no discretion to impose policy limitations on a surviving spouse's statutory waiver of the decedent's attorney-client privilege. Thus, the court is not to weigh whether there is a conflict between the interests of the surviving spouse and those of the decedent or his estate. Moreover, the surviving spouse's waiver is not statutorily limited to communications occurring during the period of marriage, and thus the court cannot impose such a limitation.

{¶ 3} Nevertheless, work product is a separate doctrine applicable to some of the documents produced by counsel in this case. We hold that the proper test to determine whether documents were prepared in anticipation of litigation and thus protected work product is whether the nature of the documents shows that they were prepared because of the prospect of litigation. The documents prepared by counsel in drafting the prenuptial agreement in this case were made in anticipation of litigation, thus invoking work-product protection. There is a good-cause exception to work-product protection. However, because an in-camera review of the documents was not conducted, this issue cannot be fully resolved at this time, necessitating a remand.

## STATEMENT OF THE CASE

{¶ 4} On June 25, 2007, the decedent and the surviving spouse signed a prenuptial agreement, and they were married on July 7, 2007. The agreement was prepared by the decedent's counsel, attorney Robert Roland of the Day Ketterer law firm. The surviving spouse had retained separate counsel.

{¶ 5} The decedent died on September 8, 2008. His son filed an application to probate the decedent's will, which left nothing to the surviving spouse. This caused the surviving spouse to file an election to take against the will. A different attorney from Day Ketterer represented the estate.

{¶ 6} The estate filed a complaint for a declaratory judgment regarding the prenuptial agreement, and the surviving spouse filed an action to void the prenuptial agreement on the grounds that there was not full disclosure of assets and that she believed the agreement dealt with divorce but not death. These actions were consolidated in the probate court.

{¶ 7} The surviving spouse issued a subpoena to attorney Roland to testify as a witness and to bring any and all files related to the decedent.[1] This caused a discovery dispute. On February 6, 2009, the estate filed a motion for a protective order and to quash the subpoena, arguing that the files relating to the decedent are protected by attorney-client privilege. The estate later added an argument that the files pertaining to preparation of the prenuptial agreement were protected by the work-product privilege, which belongs to the attorney.

{¶ 8} On February 18, 2009, the surviving spouse responded and also filed a motion to compel attorney Roland to testify on all matters relating to the decedent and to produce for inspection all personal files of the decedent. She disclosed that she needed the documents and testimony in order to invalidate the prenuptial agreement. Her motion pointed out that attorney Roland's deposition had been scheduled but that one day before the deposition, the estate's attorney called opposing counsel and indicated that he did not intend to allow his partner to testify as to any matters that took place prior to the parties' marriage and that he would not produce any files for inspection. She noted that the parties agreed to forgo the deposition until the estate could file its motion to quash and the court could rule on privilege.

{¶ 9} In response to the argument of attorney-client privilege, the surviving spouse's motion stated that the surviving spouse was waiving the decedent's attorney-client privilege under R.C. 2317.02(A) and argued that this statute

---

1. The subpoena originally sought files related to the estate and Hohler Heating & Cooling, Inc., as well. However, the surviving spouse ended up agreeing to forgo these files, and the trial court quashed the subpoena regarding the files relating to these entities.

contains no limits on the scope of the waiver. In response to the work-product argument, she urged that the prenuptial agreement was not prepared in anticipation of *imminent* litigation.

{¶ 10} On March 31, 2009, the trial court found that R.C. 2317.02(A) allows the surviving spouse to waive the attorney-client privilege for her deceased spouse without limitation. The court thus granted the motion to compel attorney Roland to testify and to bring all the decedent's files to deposition.

{¶ 11} The estate filed a timely notice of appeal. The discovery of privileged matter is subject to immediate appeal. See R.C. 2505.02(A)(3) (discovery of privileged matter is a provisional remedy), (B)(4) (order that grants or denies a provisional remedy is appealable if it in effect determines the action with respect to the provisional remedy, if it prevents judgment with respect to the provisional remedy, and if the appellant would not be afforded meaningful or effective remedy by appeal after final judgment as to all issues). See also *State ex rel. Butler Cty. Children Serv. Bd. v. Sage* (Apr. 3, 2002), 95 Ohio St.3d 23, 25, 764 N.E.2d 1027 (order granting motion to compel discovery of allegedly privileged material is not subject to Civ.R. 54(B) in order to allow immediate appeal).

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 12} The estate's first assignment of error provides:

{¶ 13} "The trial court erred in holding that appellant could waive her deceased husband's attorney-client privilege concerning communications which took place prior to the marriage regarding the preparation of a prenuptial agreement with her."

{¶ 14} Pursuant to R.C. 2317.02,

{¶ 15} "The following persons shall not testify in certain respects:

{¶ 16} "(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client."

{¶ 17} The estate argues that a surviving spouse's waiver of the decedent's attorney-client privilege is subject to the trial court's discretion to impose policy limitations as evidenced by the use of "may" in the statute. The estate also contends that this discretion anticipates the application of certain limitations on the surviving spouse's waiver. For instance, the estate urges that the waiver should not be self-serving when the waiver is to the detriment of the decedent.

In addition, the estate urges that the surviving spouse's waiver should not apply to communications that occurred prior to marriage.

{¶ 18} In the main spousal-waiver case, police investigating the 1999 disappearance of a nine-year-old girl learned that Jan Marie Franks may have been in a vehicle that collided with a child and may have assisted in disposing of the body. Franks was uncooperative in an attempted interview. Around this time, Franks was represented by counsel in a federal case. The police suspected that Franks disclosed facts about the incident to that attorney. *State v. Doe*, 2d Dist. No. 19408, 2002-Ohio-4966, 2002 WL 31105389, ¶ 2.

{¶ 19} Franks died in December 2001. A grand jury subpoenaed the attorney to provide testimony, but the attorney objected on grounds of attorney-client privilege. Franks's surviving spouse agreed to waive the attorney-client privilege. Id. at ¶ 3. The trial court held a hearing, found that the surviving spouse was married to Franks at the time of her death, and ruled that the consent of the surviving spouse constituted a valid waiver under R.C. 2317.02(A). Id. See also *State v. Doe*, 101 Ohio St.3d 170, 2004-Ohio-705, 803 N.E.2d 777, ¶ 6.

{¶ 20} On appeal, the attorney argued that the use of "may" in the statute meant that the attorney could choose whether or not to testify upon waiver by a surviving spouse. The state argued that upon waiver, the attorney must testify when subpoenaed. *Doe*, 2002-Ohio-4966, 2002 WL 31105389, at ¶ 10. The state explained that "may" is used as opposed to shall because the attorney may not be called to testify, the attorney's testimony may be deemed irrelevant, or the testimony may be inadmissible for other reasons. *Doe*, 101 Ohio St.3d 170, 2004-Ohio-705, 803 N.E.2d 777, at ¶ 13.

{¶ 21} The appellate court noted that there may be compelling policy reasons to differentiate between consent given by a client and consent given by a client's surviving spouse or representative. *Doe*, 2002-Ohio-4966, 2002 WL 31105389, at ¶ 11. The court maintained, however, that the language of the statute puts the consent of the client and the consent of the client's surviving spouse on equal footing. Id. The appellate court pointed out how in some circumstances, like those before the court, the consent of the surviving spouse would not be consistent with the decedent's wishes. Id. at ¶ 13. Yet the legislature did not provide for a different procedure in such a situation; nor did the legislature limit application of the surviving-spouse waiver to certain types of cases. Id. at ¶ 13, 15. The court even questioned the legislative wisdom of allowing a surviving spouse to waive attorney-client privilege in nontestimonial cases but pointed out that policy judgments were for the legislature. Id. at ¶ 16. The appellate court concluded that the legislature did not provide room for the trial court to weigh the decedent's interests. Id. at ¶ 18.

{¶ 22} The Ohio Supreme Court affirmed the appellate court's decision. *Doe*, 101 Ohio St.3d 170, 2004-Ohio-705, 803 N.E.2d 777, at ¶ 8. In resolving the dispute whether "may" implied that the attorney could choose not to testify despite the waiver, the Supreme Court stated that it was persuaded by the state's arguments. Id. at ¶ 14. As mentioned, the state had argued that the "may" language in the statute was employed in case the attorney's testimony was not needed, was irrelevant, or was inadmissible for some other reason. Id. at ¶ 13.

{¶ 23} The Supreme Court noted that admissibility is subject to the trial court's discretion and that this is why "may" was used in R.C. 2317.02(A). Id. at ¶ 14. The court also stated that the decision whether an attorney must testify to confidences received is ultimately one for the court, rather than the attorney. Id. at ¶ 16.

{¶ 24} The court emphasized, however, that the attorney-client privilege belongs solely to the client, specifying that R.C. 2317.02(A) "entitles" and "authorizes" the surviving spouse to waive the privilege on behalf of the client. Id. at ¶ 15, 22. Notably, the surviving spouse's decision in that case was contrary to the interests of the decedent and was potentially contrary to the interests of her estate (future lawsuit); however, the court did not concern itself with the policy considerations.

{¶ 25} Both parties believe this *Doe* case supports their position. The estate believes that certain language used by the Supreme Court shows that the trial court has discretion to allow waiver. The surviving spouse responds that the court's language on discretion means that later at trial, the attorney's testimony may be deemed inadmissible for some other reason such as hearsay. The argument of the surviving spouse here is more convincing.

{¶ 26} The Supreme Court stated that the surviving spouse is both entitled and authorized to waive the attorney-client privilege on behalf of the decedent. *Doe*, 101 Ohio St.3d 170, 2004-Ohio-705, 803 N.E.2d 777, at ¶ 15–16. The court noted that the only test employed by the trial court was whether Franks was waiving the privilege and whether the surviving spouse was in fact the spouse of Franks *at the time of her death*. Id. at ¶ 6. The court found no problem with the trial court's decisions, which did not use discretion in determining whether waiver was in the decedent's best interests or whether the decedent was married to the surviving spouse at the time of the communication to her attorney.

{¶ 27} Although the court mentioned the trial court's discretion, the mention referred to later evidentiary issues and did not imply that the trial court could ignore the waiver if it believed the decedent's rights needed more protection in certain cases. Id. at ¶ 14. The Supreme Court agreed with the state's arguments concerning the use of "may" in the statute. Id. As the court stated, "R.C. 2317.02(A) vests authority to waive the attorney-client privilege in a surviving

spouse, and not in an attorney." Id. at ¶ 16. Finally, *the Supreme Court specified that whether the decedent would have wanted the communication disclosed is irrelevant and that such policy limitations were the province of the legislative rather than the judicial branch.* Id.

{¶ 28} As such, the trial court's only decision is whether the decedent was married at the time of his or her death and whether the surviving spouse wished to waive the decedent's attorney-client privilege. If the legislature wished to limit the surviving spouse's waiver so that it applied only to communications occurring during marriage or to cases in which the disclosure is in the decedent's best interests, it could have done so. See id. See also *Jackson v. Greger,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 13 (rejecting the adoption of judicially created waivers, exceptions, and limitations for testimonial privileged statutes). Because the surviving spouse's waiver is elevated to the same status as the decedent's waiver, there are no limitations on the waiver if it is done voluntarily by a surviving spouse. This assignment of error is overruled, and the trial court's finding that attorney-client privilege was waived is upheld.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 29} The estate's second assignment of error provides:

{¶ 30} "The trial court erred in holding that counsel was required to produce the confidential personal legal files of Richard W. Hohler."

{¶ 31} This assignment of error actually contains two distinct parts. First, the estate contends that even if the surviving spouse's waiver applies here, R.C. 2317.02(A) only permits an attorney to testify after waiver but does not permit him or her to produce documents. The estate relies on the following emphasized language in the statute:

{¶ 32} "The following persons shall not *testify* in certain respects:

{¶ 33} "(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may *testify* by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived *any testimonial privilege under this division,* the attorney may be compelled to *testify* on the same subject." (Emphasis added.) R.C. 2317.02(A).

{¶ 34} The estate notes that this language says nothing about permitting the attorney to produce documents upon waiver. The estate points out that the Supreme Court has stated that this statute provides a "mere testimonial privilege precluding an attorney from testifying about confidential communications" be-

tween the attorney and his client. *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 26.

{¶ 35} However, a later Supreme Court case refutes the estate's contention here by broadly defining the scope of the testimonial privilege within R.C. 2317.02(A). See *Jackson v. Greger,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487. Contrary to the estate's contention, *Jackson* is directly on point. Factually, the discovery movant in *Jackson* sought to compel production of all attorney-client communications and documentation related to a prior action. Id. at ¶ 4. The case had nothing to do with compelling actual testimony. See id.

{¶ 36} Just as the estate argues, the concurring-in-judgment-only opinion in Jackson disagreed with the majority's conclusion that R.C. 2317.02(A) was applicable due to this fact. Id. at ¶ 25–27 (Lanzinger, J., concurring in judgment only). The concurrence urged that a case seeking production of documents is different from a case seeking to compel testimony. Id.

{¶ 37} The majority noted that the testimonial privilege in R.C. 2317.02(A) prevents an attorney from testifying concerning communications made to the attorney by a client or the attorney's advice to a client. Id. at ¶ 7, fn. 1. The court then stated, however:

{¶ 38} "A testimonial privilege applies not only to prohibit testimony at trial, but also to protect the sought-after communications during the discovery process. The purpose of discovery is to acquire information for trial. Because a litigant's ultimate goal in the discovery process is to elicit pertinent information that might be used as testimony at trial, the discovery of attorney-client communications necessarily jeopardizes the testimonial privilege. Such privileges would be of little import were they not applicable during the discovery process." Id.

{¶ 39} Thus, the majority concluded that R.C. 2317.02(A) was applicable when the motion to compel did not seek to compel testimony but sought production of attorney-client communications and other documents in discovery. Id. at ¶ 4, 7 (if a case involves communications directly between attorney and client, then R.C. 2317.02(A) applies); id. at ¶ 11 (refusing to apply *Hearns* test applicable in cases that are not subject to the statute). Thus, R.C. 2317.02(A) is applicable not only to a request to compel testimony but is also to a request for attorney-client communications contained within the attorney's file. This means that the surviving-spouse waiver in R.C. 2317.02(A) allows lifting of the attorney-client privilege with regard to both the attorney's testimony and the communications within the file.

{¶ 40} Notably, however, items that are not attorney-client communications are not subject to R.C. 2317.02(A) because this statute only involves communications to or from the client. An attorney's personal notes about his theories, opinions,

or mental impressions are not communications, which can be waived by the client or the deceased client's surviving spouse or representative.

{¶ 41} Related to this concept, under the second portion of this assignment of error, the estate argues that a legal file pertaining to the preparation of a prenuptial agreement specifically anticipates litigation and constitutes privileged-work product, which is a protected right belonging to the attorney. Thus, the estate is seeking to apply the work-product doctrine to all portions of the file relating to the preparation of the prenuptial agreement (in the event the attorney-client privilege was properly found to have been waived under the prior arguments). The pertinent rule in Ohio provides:

{¶ 42} "Trial preparation: materials. Subject to the provisions of subdivision (B)(5) of this rule [relating to experts], a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor." Civ.R. 26(B)(3).

{¶ 43} Thus, the application of this doctrine requires a two-step analysis: (1) whether the documents were prepared in anticipation of litigation and (2) whether there has been a showing of good cause.

{¶ 44} The estate argues that the prenuptial agreement was prepared in anticipation of litigation rather than in the ordinary course of business. The estate points out that the agreement itself contains language concerning the waiver of defenses and rights in court.

{¶ 45} The surviving spouse urges that the documents should not be protected as work product. In doing so, the surviving spouse asks this court to interpret "in anticipation of litigation" as requiring a real or substantial possibility of imminent litigation at the time the document was prepared. The surviving spouse concludes that there is no evidence that divorce or death was an imminent and substantial threat at the time the agreement was drafted. She alternatively argues that there was good cause for discovery of the work product and that remand would be required in the case of reversal.

{¶ 46} The phrase "in anticipation of litigation" has caused interpretation problems. Some courts require the threat of litigation to be "real and substantial." See *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, ¶ 27, citing *Guy v. United Healthcare Corp.* (S.D.Ohio 1993), 154 F.R.D. 172, 181 (Eighth District Court of Appeals held that work product requires that there exist a "real and substantial possibility of litigation" at the time the documents were written and that a party's assumption from "general business experience" is too vague). Another court requires the possibili-

ty of litigation to be substantial *and imminent.* See *Roggelin v. Auto–Owners Ins.*, 6th Dist. No. L–02–1038, 2002-Ohio-7310, 2002 WL 31888232, ¶ 19. Cf. *Perfection,* 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, at ¶ 28–29 (adding imminent only when speaking of a nonattorney's work product).

{¶ 47} Other courts view the nature of the document and the factual circumstances to determine if the document was prepared or obtained "because of" the prospect of litigation. This is the position advocated in Wright & Miller, 8 Federal Practice and Procedure (1970) 198, Section 2024:

{¶ 48} "Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation."

{¶ 49} This also seems to be the prevalent position in the United States circuit courts. See, e.g., *United States v. Roxworthy* (C.A.6, 2006), 457 F.3d 590, 593; *United States v. Adlman* (C.A.2, 1998), 134 F.3d 1194, 1202; *Natl. Union Fire Ins. Co. v. Murray Sheet Metal Co.* (C.A.4, 1992), 967 F.2d 980, 984; *Senate of Puerto Rico v. United States Justice Dept.* (C.A.D.C.1987), 823 F.2d 574, 581; *Simon v. G.D. Searle & Co.* (C.A.8, 1987), 816 F.2d 397, 401; *Binks Mfg. Co. v. Natl. Presto Indus., Inc.* (C.A.7, 1983), 709 F.2d 1109, 1119. But see *United States v. Davis* (C.A.5, 1981), 636 F.2d 1028 (adopting this test and adding that the primary motivating purpose behind obtaining or creating the document must be to aid in possible future litigation). In applying this "because of" test, the Sixth Circuit has also stated that a party must "have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *Roxworthy,* 457 F.3d at 594.

{¶ 50} Civ.R. 26(B)(3) does not use words such as substantial or imminent possibility of litigation but merely states "in anticipation of litigation." Cf. R.C. 121.22(G) (specifying "pending or imminent court actions"); R.C. 149.43(A)(2)(c) (applying to "specific investigatory work product"). *Thus, the basic "nature of the document" or "because of" rule is more in accord with the plain terms of the rule.*

{¶ 51} Under this test, the documents surrounding the preparation of the prenuptial agreement would be initially protected by work product since they were created "because of" the prospect of litigation in a future divorce or will contest. The nature of the documents and the factual circumstances surrounding their creation support this conclusion. The preparation of the prenuptial agree-

ment shows a subjective belief that litigation was a real possibility and that belief was not objectively unreasonable. Notably, the surviving spouse had three prior divorces and the decedent had two prior divorces. Moreover, the intention to omit one's spouse from a will makes the possibility of litigation in probate court objectively real as well.

{¶ 52} In conclusion, the prenuptial agreement was not prepared in the ordinary course of business. The agreement was drafted in order to avoid litigation and in order to provide the parameters of a cause of action in the case of litigation. The documents relating to the preparation of the document served the same purpose as the agreement itself. As such, the documents concerning the agreement clearly anticipated future litigation. We thus move to the next step in the work-product analysis.

{¶ 53} Even if documents are prepared in anticipation of litigation, the work-product doctrine applies but can be lifted in the event good cause is shown. The showing of good cause for discovery of work product places a burden on the party seeking discovery to demonstrate the need for the documents, i.e., that the documents are relevant and otherwise unavailable. *Jackson,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, at ¶ 16. Here, the surviving spouse alleges that she was unaware that the prenuptial agreement applied in the case of death even though it stated that it defined rights in the event of death and specified that she waived any right to elect to take against the will. This latter allegation deals with whether she read or understood the agreement. There is not a proper demonstration that the file is necessary or that there is good cause for viewing the *entire* legal file on this basis.

{¶ 54} The surviving spouse also alleges that she was not provided full disclosure of assets. This question is not as relevant to the legal file in this case as it could be in other cases. This is because here, the prenuptial agreement waived a formal recitation of assets and stated that each party was aware of the other's assets. Still, if the attorney has some communication concerning, for instance, the client's wish to avoid disclosing his net worth to his fiancée, then there may be good cause for disclosure of this type of work product.

{¶ 55} However, it is not for the surviving spouse's counsel to determine whether the file contains any information relevant to her claim that the prenuptial agreement is invalid. That is a matter for the trial court.

{¶ 56} Thus, this case is remanded with orders for the trial court to conduct an in-camera review of the contested portions of the file (those dealing with the prenuptial agreement) and determine whether any are relevant to the issue of full disclosure of assets and whether these specific items are necessary to establish the surviving spouse's claim. The trial court is instructed to distinguish between

ordinary fact items and opinions, mental impressions, or theories of the attorney, which are almost absolutely privileged from disclosure as the surviving spouse's brief concedes. See *Perfection*, 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, at ¶ 24. See also *Stegman v. Nickels*, 6th Dist. No. E–05–069, 2006-Ohio-4918, 2006 WL 2709405, ¶ 17 (abuse of discretion to compel disclosure of entire file without separating ordinary fact work product from opinion work product).

## ASSIGNMENT OF ERROR NUMBER THREE

{¶ 57} The estate's final assignment of error provides:

{¶ 58} "The trial court erred in granting a motion to compel the testimony of a witness who had not yet been asked a question he refused to answer."

{¶ 59} As set forth in the statement of the facts, one day before attorney Roland's scheduled deposition, the estate's attorney advised opposing counsel that his partner, attorney Roland, would not be producing the decedent's legal file and would not be testifying about any attorney-client communications occurring prior to marriage. The parties agreed to cancel the deposition in order for the estate to move for a protective order and for the court to resolve the questions of privilege, waiver, and work product. However, the estate only filed a motion to quash the subpoena deuces tecum and a protective order concerning the legal file. The estate did not file a motion for protective order concerning the subpoena to appear or a motion to limit the deposition questions. Since the privilege and waiver issues to be resolved in ruling on the estate's motion would apply to the attorney's testimony as well, the surviving spouse filed a motion to compel testimony at deposition.

{¶ 60} The estate argues that although the order compelling it to produce documents was ripe pursuant to Civ.R. 45(C)(2)(a), the motion to compel testimony and the resulting order to compel testimony were premature as attorney Roland had not yet appeared for deposition and refused to answer certain questions. See *Riggs v. Richard*, 5th Dist. No. 2006CA234, 2007-Ohio-490, 2007 WL 350976, ¶ 21 (holding that the record was not sufficiently developed to determine whether answers anticipated to be sought by demanding party were privileged or whether other party had waived privilege, and thus trial court's ruling was premature until questions were asked at deposition and objected to). The estate reasons that every question asked in deposition would not be subject to privilege and that each question should be asked, objected to, and brought to the court on a case-by-case basis. The estate cites Civ.R. 37(A)(2), which states:

{¶ 61} "(A) Upon reasonable notice to other parties and all persons affected thereby, a party may move for an order compelling discovery as follows:

{¶ 62} " * * *

{¶ 63} "(2) If a deponent fails to answer a question propounded * * * under Rule 30 [2] * * * the discovering party may move for an order compelling an answer * * *. On matters relating to deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order.

{¶ 64} " * * *

{¶ 65} "(B)(1) If a deponent fails to be sworn or to answer a question after being directed to do so by the court, the failure may be considered a contempt of court."

{¶ 66} The surviving spouse first states that advising opposing counsel prior to deposition that one will not answer any questions concerning the prenuptial agreement sufficiently constitutes a failure to answer a deposition question when the parties have agreed to cancel the deposition in order to have the court rule on privilege. The surviving spouse distinguishes the case cited by the estate on the ground that the estate submitted the question of privilege and waiver of privilege to the trial court and that when the court rules that nothing is privileged by the attorney-client privilege due to waiver, the deposition questions are irrelevant and need not be judged on a case-by-case or question-by-question basis. The surviving spouse also cites Civ.R. 26(C), which provides:

{¶ 67} "Upon motion by any party or by the person from whom discovery is sought and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions * * *; (4) that certain matters not be inquired into or that the scope of discovery be limited to certain matters * * *.

{¶ 68} "If the motion for a protective order is denied in whole or in part, the court, on terms and conditions as are just, may order that any party or person provide or permit discovery."

{¶ 69} Under the last sentence quoted above, denial of a protective order concerning the file in whole or in part would allow the court to enter an order compelling discovery on terms that are just. Ordering the attorney to testify without asserting privilege is a just term when the trial court has already found that privilege was waived by the surviving spouse.

---

**2.** Civ.R. 30(A) states that any party may take the testimony of any person by oral deposition and that attendance may be compelled by subpoena. Civ.R. 30(B) provides that the witness shall be put under oath.

{¶ 70} It should be noted here that Civ.R. 26 contains a more pertinent provision. Civ.R. 26(B), which defines the scope of discovery, provides that when information subject to discovery is withheld on a claim that it is privileged, the claim shall be made expressly so the demanding party can contest the claim. Civ.R. 26(B)(6) (without calling the motion a protective order). This would seem to be distinguishable from a Civ.R. 26(C) protective order made to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense."

{¶ 71} Besides titling their motion as one for a protective order under Civ.R. 26, the estate also called their motion one to quash under Civ.R. 45. This latter rule deals with subpoenas. It provides that a party can file a motion to quash or to modify a subpoena or to appear or produce only under specified conditions if the subpoena requires disclosure of privileged or otherwise protected material and no exception or waiver applies. Civ.R. 45(C)(3)(b). Another provision states that when information subject to subpoena is withheld on a claim that it is privileged, a motion shall be made so that the demanding party can contest this claim. Civ.R. 45(D)(4) (entitled "Duties in responding to subpoena").

{¶ 72} Although neither Civ.R. 26(B)(6) nor Civ.R. 45(C)(3)(b) and (D)(4) specifically provide that the court can order a party to testify after ruling on privilege, there is no reason why the court cannot do so. Even if the motion to compel by the surviving spouse was premature under Civ.R. 37(A)(2), this does not mean that the court cannot rule that the attorney shall testify without asserting attorney-client privilege when the court has already appropriately ruled that privilege was waived. Thus, even *if* the court's entry should have merely stated that the attorney shall testify without asserting privilege (instead of saying that a motion to compel was granted), prejudice is lacking.

{¶ 73} A court has broad discretion in fashioning remedies for discovery disputes. The issue of whether any testimony is privileged was encompassed within the ruling that attorney-client privilege was waived. These issues of privilege and waiver were properly before the court and were placed before the court on the estate's own motion. As the surviving spouse pointed out, once the surviving spouse's waiver was accepted by the trial court, there was no longer any claim of attorney-client privilege that could be asserted and ascertained at a later date.

{¶ 74} Moreover, the estate filed for a protective order under Civ.R. 26. The only portion of this rule mentioning a protective order is Civ.R. 26(C). Thus, the estate consented to the application of this rule, which allows the court, upon denying its motion in whole or in part, to order attorney Roland to provide or permit discovery on terms and conditions as are just. See Civ.R. 26(C). If

privilege was waived by the surviving spouse, then ordering attorney Roland to testify without asserting privilege is a just term.

{¶ 75} We now turn to the estate's reliance on the *Riggs* case. See *Riggs v. Richard*, 5th Dist. No. 2006CA234, 2007-Ohio-490, ¶ 21. Besides the fact that we are not bound by another district's case, this case is distinguishable from *Riggs*. In that case, there was an issue of waiver by the parties themselves, and it could not be determined to which communications the waiver applied until each communication was inquired into. Here, the surviving spouse informed the trial court that he was waiving the attorney-client privilege under R.C. 2317.02(A). The trial court found that the express waiver applied to every communication between the decedent and his attorney. There was no need to wait to decide whether the waiver applied to each communication as there was in *Riggs*. We also note that although *Riggs* quoted and applied Civ.R. 26(C), the court in that opinion did not acknowledge that rule's concluding sentence providing that in denying a motion for protective order, the court can make any order that is just.

{¶ 76} Additionally, the parties here acknowledged that the documents concerning the prenuptial agreement and the attorney-client communications concerning the agreement were privileged. If waiver applied to the legal file, that decision was admittedly not premature, and that decision would dispose of any issue regarding testimony, then a decision that attorney-client privilege could not be invoked during deposition testimony due to that same waiver is not premature under the circumstances of this case.

{¶ 77} Thus, there is no indication that the trial court acted unreasonably, arbitrarily, or unconscionably in compelling attorney Roland to testify at deposition without asserting his claim of attorney-client privilege. See *State ex rel. The V. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (decision on motion to compel deposition testimony was not abuse of discretion).

## CONCLUSION

{¶ 78} For the foregoing reasons, we hereby conclude that the surviving spouse's statutory waiver of attorney-client privilege is not subject to judicially created policy limitations, and we thus affirm the trial court's decision on that issue. However, this case is remanded with orders for the trial court to conduct an in-camera good-cause review of the documents prepared by counsel in anticipation of litigation and to determine whether any are relevant to the issue of full disclosure of assets and whether these specific items are necessary to establish the surviving spouse's claim.

Judgment affirmed
and cause remanded.

DONOFRIO, J., concurs.

DEGENARO, J., dissents.

DEGENARO, Judge, dissenting.

{¶ 79} I must respectfully dissent. The parties have ignored the language from R.C. 2317.02(A) that resolves this appeal. The disputed "may" language in the statute preserves the trial court's discretion to determine whether to admit the attorney's testimony, once the waiver threshold has been crossed. It has no bearing on determining by whom the privilege may be waived. The controlling statutory language provides that either the surviving spouse or the executor of the decedent's estate is entitled to waive the privilege on behalf of the deceased client. And, as the statute is written, the surviving spouse and the executor stand on equal footing with respect to that authority. As both the surviving spouse and the executor here seek to exercise that authority, the trial court must determine which party will control the waiver, and it failed to do so.

{¶ 80} The trial court correctly held that the privilege is the client's, not the attorney's, and that R.C. 2317.02(A) is the exclusive means by which the attorney-client privilege may be waived. It also correctly concluded that the surviving spouse may waive the privilege for their deceased spouse and that there is no statutory language limiting the scope of that waiver. However, the disputed issue remains: Where two persons are equally entitled by statute to control the attorney-client privilege for the decedent and each seek that authority, who controls the privilege?

{¶ 81} *Doe* is instructive as it clearly resolves that the privilege is never the attorney's to waive and provides guidance as to the scope of the authority of those statutorily entitled to exercise the waiver on behalf of their decedent. *State v. Doe*, 101 Ohio St.3d 170, 2004-Ohio-705, 803 N.E.2d 777. However, there is a significant fact that makes *Doe* distinguishable from this case: who was asserting control over the privilege. In *Doe*, it was the decedent's surviving spouse, who was authorized by the statute to control the privilege, and the decedent's attorney, who was not. Here, the parties asserting control over the privilege are both authorized to do so by R.C. 2317.02(A). Thus, the Supreme Court's decision in *Doe* left open the question we have before us: how to determine who has control over the waiver, the surviving spouse or the executor.

{¶ 82} Nonetheless, the Second District's equal-footing language in *Doe* is instructive with respect to resolving this question. In *Doe*, the Second District held that because R.C. 2317.02(A) contained no limiting language, the decision of the surviving spouse with respect to waiver stood on equal footing to any decision the decedent could have made. *State v. Doe*, 2d Dist. No. 19408, 2002-Ohio-4966, 2002 WL 31105389, at ¶ 11. Similarly, as there is neither limiting nor prioritizing

language differentiating between a surviving spouse and an executor, I conclude that a plain reading of the statute dictates that they likewise stand on equal footing with respect to being entitled to control a decedent's waiver of the attorney-client privilege.

{¶ 83} The Second District hinted at this conclusion in *Doe*:

{¶ 84} "Moreover, the structure of the statute gives equal effect to the client's own consent and to the consent of the surviving spouse or representative * * *." *Doe*, 2002-Ohio-4966, 2002 WL 31105389, ¶ 15.

{¶ 85} And:

{¶ 86} "Although we may question the wisdom of allowing a surviving spouse or representative to waive the attorney-client privilege in non-testamentary matters, we are not in a position to substitute our judgment for that of the legislature, and we must presume that the statute, as written, embodies the legislature's public policy determinations." Id. at ¶ 16.

{¶ 87} As both parties stand on equal footing statutorily, it is left to the discretion of the trial court to determine which party will control the privilege. This is not a court invading the province of the legislature as cautioned against by *Doe*. As in other areas of the law, when the legislature gives a trial court statutory alternatives, it is within the discretion of the trial court, based upon the facts before it, to choose one of those alternatives. And on appeal, the question becomes whether the trial court abused its discretion in making its choice between statutorily designated alternatives. This is a decision clearly within the province of the judicial branch.

{¶ 88} Here, we cannot review whether or not the trial court abused its discretion, because it did not exercise its discretion. The trial court disregarded that the exclusive means to waive the attorney-client privilege, R.C. 2317.02(A), also entitles the executor of decedent's estate to exercise control over the waiver. Instead, it merely made partial statements of the law with respect to waiver of the attorney-client privilege without fully analyzing the statutory language, and it failed to choose one of the two parties, who are equally entitled by the statute, to control the waiver.

{¶ 89} Accordingly, I would reverse the judgment of the trial court and remand the matter to determine whether the surviving spouse or the executor shall control the decedent's attorney-client privilege.