[Cite as *Zimpfer v. Roach*, 2017-Ohio-8437.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

BLAKE ZIMPFER, ET AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO. 17-17-03

    v.

SANDRA S. ROACH, ET AL.,          O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Shelby County Common Pleas Court
Probate Division
Trial Court No. 2015 CVA 00001

Judgments Affirmed

Date of Decision:   November 6, 2017

APPEARANCES:

    *Richard Kolb* for Appellants

    *James L. Thieman* for Appellees

**SHAW, J.**

{¶1} Plaintiffs-appellants, Blake and Courtney Zimpfer ("Appellants"), appeal the February 27, 2017 judgment of the Shelby County Court of Common Pleas, Probate Division, journalizing the jury's verdict in favor of defendants-appellees, Sandra S. Roach and Peggy A. Hall, et al. ("Appellees"), on Appellants' will contest claim, finding that Appellees did not exert undue influence over their father, Robert E. Zimpfer ("Jake"), when he executed his last will three weeks prior to his death. Appellants also appeal the judgment of the same court overruling their motion for a new trial.

{¶2} On appeal, Appellants assign error to several procedural rulings on discovery matters made by the trial court and argue that the trial court erred in granting summary judgment on their claim that Jake lacked the requisite testamentary capacity to execute the contested will. Some fifteen months after the case had been pending through various phases of discovery and motion practice, Appellants retained new counsel. In many respects, the assignments of error arise from the trial court's responses to the efforts of new counsel to revisit a number of issues pertaining to the prior course of the litigation.

*Relevant Factual Background*

{¶3} Jake died on September 6, 2014. Jake had three children: defendant-appellee, Sandra Roach, defendant-appellee, Peggy Hall, and David Zimpfer, who

pre-deceased Jake. Jake had six grandchildren: plaintiffs-appellants, Blake and Courtney Zimpfer, who are David's children; and defendants-appellees Rebecca Roach, Andrea Roach, Bradley Hall, and Heather Hall, who are Sandra's and Peggy's children.

{¶4} On August 15, 2014, three weeks before his death, Jake executed his Last Will and Testament at the nursing home where he died, revoking his prior existing will. The record indicates that Jake's prior existing will mirrored that of his wife's, Grace, who predeceased him, and divided the residue of his probate estate in equal thirds between the children, Sandra, Peggy, and David, with Appellants receiving their father's share as his heirs. The most valuable asset contained in the residue of Jake's probate estate was the family farmland worth approximately $1,235,800, with the total residue being valued at $1,478,700.

{¶5} In his Last Will and Testament, Jake bequeathed $5,000 to each of his six grandchildren and changed his prior existing will to bequeath the residue of his probate estate equally between his two living children, Sandra and Peggy, who were also appointed as Co-Executors. Thus, in Jake's Last Will and Testament, Appellants were no longer receiving any part of the residue of Jake's probate estate as their Father's heirs.

*Relevant Procedural History*

**{¶6}** On February 11, 2015, Appellants, represented by their first counsel of record, filed a "Will Contest Complaint" against the other beneficiaries under Jake's August 15, 2014 Will—i.e., their two aunts and four cousins. Appellants asserted three counts in their complaint: (1) that Jake's Last Will and Testament was invalid because it did not comply with the requirements of R.C. 2107.03; (2) that Jake lacked the testamentary capacity to execute his Last Will and Testament; and (3) that Sandra and Peggy exerted undue influence over Jake when he executed his Last Will and Testament, which resulted in Sandra and Peggy receiving a greater share of Jake's probate estate while diminishing what Appellants would have received under Jake's prior existing will as their father's heirs. Appellees timely filed an answer generally denying the allegations contained in the complaint and asserting numerous defenses.

**{¶7}** On July 10, 2015, Appellants filed a motion to compel, requesting the trial court issue an order compelling Appellees to fully respond to their previously tendered discovery requests. Specifically, Appellants sought the production of a copy of every will ever drafted for Jake, the attorney's file containing any notes, correspondence, memos, drafts, and copies of any attorneys for Jake showing the drafting and execution of any wills or estate planning documents, as well as Jake's

medical records in Appellees' possession and a signed medical authorization form. Appellees objected to producing these items on privilege and/or relevance grounds.

{¶8} The trial court on its own motion ordered Appellees to make the files related to the contested discovery issue available for an *in-camera* inspection.

{¶9} On October 22, 2015, the trial court issued a "Judgment Entry/Orders on Discovery." With respect to the requested materials relating to Jake's prior wills and the attorney's file, the trial court denied Appellants' motion to compel on the grounds that the requests were overbroad and that Appellants had failed to show good cause for an order compelling the production of the requested materials. However, the trial court granted the motion to compel relating to the medical records and necessary authorizations in Appellees' possession.

{¶10} The record indicates that discovery proceeded to be exchanged between the parties and, on December 29, 2015, Appellees filed a motion for summary judgment. Appellants filed their memorandum in opposition to Appellees' motion for summary judgment on January 26, 2016.

{¶11} On February 1, 2016, the parties submitted their witness and exhibit list and proposed jury instructions in contemplation of the jury trial scheduled for February 22, 2016, pending the trial court's ruling on Appellees' summary judgment motion. The following day, Appellees filed their reply to Appellants' memorandum in opposition to summary judgment.

{¶12} On February 25, 2016, Appellants filed a notice of appeal from the trial court's January 26, 2016 Judgment Entry overruling, in part, their motion to quash the Appellees' subpoena for certain items in discovery unrelated to this appeal. Appellees filed a cross-appeal from the same judgment. As a result of the pending appeal, the trial court deferred its ruling on summary judgment and vacated the scheduled trial date.

{¶13} On July 5, 2016, while the intervening appeal was still pending, Appellants filed a notice of substitution of new counsel.

{¶14} On July 11, 2016, new counsel for Appellants sought leave to file an amended complaint in order to assert an additional claim seeking to set aside certain inter vivos transfers of assets based upon their assertions that they had only recently learned about the bank accounts and insurance policies in question. The trial court ultimately overruled Appellants' motion for leave to amend their complaint on July 21, 2017, finding that Appellants were aware of these accounts and policies, which were included in the inventory when the contested will was admitted to probate and that Appellants failed to timely amend their complaint.

{¶15} On July 22, 2016, new counsel for Appellants filed a "Motion for Extension of Time to Respond to Defendants' Motion for Summary Judgment" pursuant to Civ.R. 56(F). The Civ.R. 56(F) motion contained an affidavit of Appellants' new counsel stating that more time was needed to conduct discovery to

respond to Appellees' motion for summary judgment, despite the fact that Appellants' prior counsel had already filed a response to the summary judgment motion several months earlier. Appellees filed a response opposing the Civ.R. 56(F) motion; specifically contending that new counsel was simply attempting to get "a second bite at the apple" on discovery matters and other issues that had already been unsuccessfully argued by his predecessor and were resolved by the trial court's October 22, 2015 Judgment Entry. (Doc. No. 84 at 3).

{¶16} On August 1, 2016, this Court issued its decision on the appeal involving the unrelated discovery matter.

{¶17} On August 3, 2016, without leave of court and while their Civ.R. 56(F) request was still pending, Appellants filed "Plaintiffs' Supplement to Memorandum in Opposition to Defendant's Motion for Summary Judgment." Approximately a week later, the trial court overruled Appellants' Civ.R. 56(F) motion for extension of time finding "no good cause exists to grant Plaintiff's relief at this advanced stage in the proceedings." (Doc. No. 88 at 2).

{¶18} On September 12, 2016, the trial court issued a decision on Appellees' motion for summary judgment on the three claims asserted in Appellants' original complaint. The trial court found: (1) that the admission of Jake's Last Will and Testament by the Probate Court represented prima facie evidence that the will was valid and complied with the requirements of R.C. 2107.03. The trial court also

found that Appellants did not present any evidence to rebut this presumption; and (2) that Appellants failed to present evidence establishing that Jake did not possess the requisite testamentary capacity at the time he executed the August 15, 2014 Will. Therefore, as to these two claims the trial court found that no genuine issue of material fact existed and granted Appellees' motion for summary judgment.

{¶19} However, as to claim (3) of the original complaint, the trial court found that a genuine issue of material fact existed as to whether Sandra and Peggy exerted undue influence over Jake when he executed the August 15, 2014 Will. The trial court found Appellants' claim that Sandra and Peggy had a confidential and fiduciary relationship with Jake by virtue of the Power of Attorney that was granted to them created a presumption of undue influence, which was a question of fact that must be resolved by the jury. Accordingly, the trial court overruled Appellees' motion for summary judgment with respect to Appellants' claim of undue influence.

{¶20} On September 16, 2016, Appellants filed numerous subpoenas *duces tecum* for the attorney who drafted Jake's wills, including the August 15, 2014 Will, and for various financial and/or insurance institutions where Jake maintained accounts and policies. The subpoenas requested the production of specific items related to Jake's estate planning and his financial accounts and were reminiscent of prior counsel's broad request for material that was previously denied by the trial

court. In response, Appellees' filed a "Motion for Protective Order and Motion to Quash" the subpoenas, which was granted, in part, by the trial court.

{¶21} The trial court ordered that all discovery on the permitted matters, relative to the claim of undue influence, be completed by October 31, 2016. The trial court also scheduled a jury trial to commence on January 10, 2017.

{¶22} On January 10, 11, and 12, 2017, the case was heard before a jury. Several witnesses testified, including the attorneys who drafted Jake's August 15, 2014 Will and handled the estate planning of both Jake and his wife, Grace, for several years, as well as the legal assistant from the law office who witnessed the signing of Jake's August 15, 2014 Will in the nursing home.

{¶23} The evidence at trial established that after Grace's death in the Spring of 2013, Jake had spent a significant amount of time and money purchasing fractional shares of the family farmland from relatives and tiling the land to improve drainage. During conversations regarding his estate planning in 2013 and 2014, Jake had expressed concern with Appellants receiving a partial share of the land and wanted to avoid the risk of fractional ownership of the land.[1] Accordingly, Jake decided to change his will to leave the farmland to Appellees Sandra and Peggy. The record also indicates that Sandra's husband had at one time farmed the land. Moreover, even though the claim of testamentary capacity was not tried before the

---

[1] Appellants were ages 19 and 24 at the time of trial.

jury, the record contains ample evidence upon which the jury could have found that Jake possessed the requisite testamentary capacity to execute the August 15, 2014 Will.

**{¶24}** On January 12, 2017, the jury entered its verdict in favor of Appellees, finding that Jake's Last Will and Testament was not the product of undue influence. Appellants' subsequently filed a motion for a new trial, which was overruled by the trial court.

**{¶25}** Appellants now bring this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED BY DENYING DISCOVERY OF DOCUMENTS ESSENTIAL TO PROVING PLAINTIFFS' CASE, CONTRARY TO THE LIBERAL DISCOVERY ALLOWED UNDER CIVIL RULE 26(A).**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS TO PLAINTIFFS' THEORY OF INCOMPETENCY.**

*First Assignment of Error*

**{¶26}** In their first assignment of error, Appellants contend that the trial court's procedural rulings violated the liberal discovery permitted under Civ.R. 26(A) and inhibited their ability to prove their case. Specifically, Appellants assign error to the trial court: (1) overruling their motion to compel the Appellees'

production of all documents relating to Jake's estate planning, including any and all drafts, codicils and wills ever made, and the attorney's file containing those documents and relevant communications with Jake, (2) overruling their Civ.R. 56(F) motion, and (3) granting, in part, Appellees' motion for a protective order and motion to quash subpoenas filed by Appellants.

*Standard of Review*

{¶27} The trial court has broad discretion in regulating the discovery process. *State ex rel. Grandview Hosp. & Med. Ctr. v. Gorman*, 51 Ohio St.3d 94, 96 (1990). Determinations during the course of discovery will not be reversed in the absence of an abuse of discretion that prejudicially affects substantial rights of the parties. *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 58 (1973). An abuse of discretion constitutes a decision that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*1. Appellants' Motion to Compel*

{¶28} In July of 2015, Appellants' prior counsel filed a motion requesting an order to compel Appellees to comply with the following requests:

> **Request No. 7: Produce a copy of each and every Last Will and Testament of Robert E. Zimpfer ever drafted, including copies of any and all drafts of the same.**
>
> **Request No. 18: Produce any and all copies of, and any and all prior versions, drafts, or nonconforming copies of, any and all wills or codicils of Decedent or other testamentary documents**

> **which are, or may be, wills codicils, or other probatable testamentary documents of Decedent.**
>
> **Request No. 19: Produce a copy of the attorney file including notes, correspondence, memos, drafts, and copies of any attorneys for Decedent showing the drafting and execution of any wills or estate planning documents prepared for or signed by Decedent at any time.**
>
> **Request No. 22: Produce a copy of any and all documents relating to the estate plans of Decedent.**

(Doc. No. 26 at 2).

{¶29} In their motion to compel, Appellants claimed that Appellees improperly objected to producing these items on privilege and/or relevance grounds. Specifically, with respect to the attorney's file Appellees stated in their discovery response that Appellants' request "goes beyond the scope of the waiver of the privilege found in R.C. Section 2317.02(A)(1)(b). If you will narrow the scope of this request to limit your request to the scope of that statute, we will respond accordingly." (Doc. No. 26 at 2). In response, Appellants argued that the information they requested, especially the copies of Jake's prior wills, was not privileged and thus discoverable under R.C. 2317.02. Appellants further claimed that these documents were essential for them to obtain in order to prove their will contest claim.

{¶30} Appellees filed a response to Appellants' motion to compel, claiming that the exemption to attorney-client privilege contained in R.C. 2317.02(A)(1)(b)

only extended to testimony regarding the communications between attorney and client and not the communication itself—i.e., not the documents related to the communication. As previously mentioned, the trial court overruled Appellants' request to compel the production of these documents.

{¶31} On appeal, Appellants claim that the trial court erred in overruling their motion to compel the production of all of Jake's prior wills and the attorney's file. In addition to maintaining the disputed material was privileged, Appellees point to the fact that a stipulation was entered at trial that Jake's prior will mirrored that of his wife's, Grace, and that Grace's probated will was entered as an exhibit at trial.

{¶32} The statutory exception at issue to attorney-client privilege is contained in R.C. 2317.02(A)(1)(b), which states:

> **(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.**
>
> **The testimonial privilege established under this division does not apply concerning either of the following:**
>
> **\* \* \***

**(b) A communication between a client who has since died and the deceased client's attorney if the communication is relevant to a dispute between parties who claim through that deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction, and the dispute addresses the competency of the deceased client when the deceased client executed a document that is the basis of the dispute or whether the deceased client was a victim of fraud, undue influence, or duress when the deceased client executed a document that is the basis of the dispute.**

**{¶33}** Despite Appellants' characterization on appeal, in overruling their motion to compel, the trial court did not specifically deny the requests for all of Jake's prior wills and the drafting attorney's file based solely upon privilege. Nor did the trial court specifically rule that the statutory exemption would under no circumstances apply to the written communications or documents themselves. Rather, the record demonstrates that the trial court ordered an *in-camera* inspection of the disputed materials to take place and subsequently found that:

**[The] discovery requests (number 7, 18, 19, and 22) are overbroad and not specific to the filed dispute. Plaintiffs request for *each and every* last will (request 7) and *any and all wills* (request 18) contemplate documents immaterial to the parties' dispute (i.e. a potential will made prior to the birth of the Plaintiffs etc., etc.).**

(Doc. No. 39 at 3)(emphasis sic).

**{¶34}** The trial court also found that Appellants "failed to show good cause for the need of materials requested under these requests." (*Id.*, citing *Jackson v. Greger*, 110 Ohio St.3d 448, 2006-Ohio-4968.).

**{¶35}** Notably, Appellants never modified and renewed the scope of their request, even though the trial court appeared to relay to them that the problematic issue was with their request being too broad in scope and not demonstrating relevancy to the contested will dispute, as opposed to the request seeking privileged content. For instance, Appellants' requests for the production of documents did not indicate the relevance of the attorney's file and a copy of every will ever drafted for Jake, which spanned a timeline of several years prior to the execution of the contested will, to the *specific time frame* related to determining Jake's testamentary competency or to whether Jake was a victim of fraud, undue influence, or duress *when he executed the August 15, 2014 Will. See* R.C. 2317.02(A)(1)(b).

**{¶36}** Moreover, Appellants have not cited any legal authority supporting their specific interpretation of the statutory exception to attorney-client privilege in R.C. 2317.02(A)(1)(b) that would ostensibly mandate reversal of the trial court's ruling on their motion to compel. *See Jackson* at ¶ 12 (declining "to add a judicially created waiver to the statutorily created privilege."); *see also*, *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942 (1st Dist.) (narrowly construing the statutory attorney-client waiver in R.C. 2317.02(A) to testimonial speech from an attorney after *Jackson*), *but see Estate of Hohler v. Hohler*, 185 Ohio App.3d 420, 2009-Ohio-7013 (broadly construing the spousal waiver in R.C. 2317.02(A) to include

documentation, but not discussing the scope of the statutory waiver in R.C. 2317.02(A)(1)(b)).

**{¶37}** Thus, we cannot say that the trial court abused its discretion in denying Appellants' motion to compel the production of certain materials pursuant to the requests as written and submitted by prior counsel.

*2. Discovery Rulings After New Counsel*

**{¶38}** Appellants also claim on appeal that the trial court's discovery rulings deprived their new counsel of the opportunity to conduct discovery after being retained for the case.

*a. Appellants' Civ.R. 56(F) Motion*

**{¶39}** Appellants assert that the trial court erred in overruling their motion for extension of time to respond to Appellees' motion for summary judgment. Ohio Rule of Civil Procedure 56(F) provides:

> **Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just**.

**{¶40}** Pursuant to Civ.R. 7(A), the grounds for a Civ.R. 56(F) motion for a continuance must be stated with particularity. Moreover, as stated above, Civ.R. 56(F) requires that the motion to be supported by an affidavit containing "sufficient

reasons why (the nonmoving party) cannot present by affidavit facts sufficient to justify its opposition" to the summary judgment motion.

**{¶41}** Thus, " '[m]ere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment.' " *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, ¶ 40, quoting *Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 169 (8th Dist. 1978). We further note that "Civ.R. 56(F) is discretionary, not mandatory." *GMAC Mortg., L.L.C. v. Purnell*, 10th Dist. Franklin No. 13AP-551, 2014-Ohio-940, ¶ 12.

**{¶42}** Here, new counsel for Appellants filed a Civ.R. 56(F) motion shortly after the trial court overruled the motion for leave to file an amended complaint. New counsel submitted an affidavit with the Civ.R. 56(F) motion for extension of time stating the following reasons in support:

> **While preliminary discovery has already taken place, this case got sidetracked on a discovery dispute and went to the court of appeals.**
>
> **Medical records have not been ordered, other paper discovery is incomplete, and the depositions of the two primary defendants, Sandra Roach and Peggy Hall, have not been taken.**

**{¶43}** The record does not support new counsel's recitation of the status of the case at that point in time. Specifically, the affidavit of new counsel fails to mention that his predecessor had already fully responded to Appellees' motion for

summary judgment with supporting affidavits and had indicated to the trial court several months earlier that Appellants were ready to proceed to trial. Thus, prior to new counsel being retained, the case had advanced well past the "preliminary discovery" phase. The record also indicates that written requests for discovery and interrogatories had been exchanged prior to the filing of Appellees' motion for summary judgment, some eight months earlier.

{¶44} Moreover, Appellees had been ordered by the trial court in its October 22, 2015 Judgment Entry to produce the medical records in their possession and to provide a medical authorization form. Appellees submitted evidence that they had complied with the trial court's order prior to the motion for summary judgment being filed in December of 2015.

{¶45} The trial court overruled Appellant's Civ.R. 56(F) motion stating that:

> **This case has been pending for 18 months. This Court was active in the management of this case which included multiple pre-trials, mediation, and resolving discovery disputes. The discovery issues were timely addressed and neither party requested more time to complete discovery. At the final pre-trial (February 1, 2016) the Court was advised that the parties were ready for trial, only awaiting the Court's ruling on summary judgment.**
>
> **The Court finds no good cause exists to grant Plaintiffs relief at this advanced stage in the proceedings.**

(Doc. No. 88 at 2).

{¶46} As a general rule, a trial court has the inherent authority to manage its own proceedings and control its own docket. *See Love Properties, Inc. v. Kyles*, 5th

Dist. Stark No. 2006 CA 00101, 2007-Ohio-1966, ¶ 37, citing *State ex rel. Nat. City Bank v. Maloney*, 7th Dist. Mahoning No. 03 MA 139, 2003-Ohio-7010, ¶ 5. The record supports the trial court's observations regarding the timelines of the case. Furthermore, even though it appears from the record that Appellants' previous counsel strategically decided against deposing Appellees Roach and Hall prior to trial, new counsel's decision to employ a different tactic does not outweigh other legitimate considerations such as: the fact that the case had been pending for nearly eighteen months, that discovery had already been exchanged, that a motion to compel had been litigated and timely ruled upon, that the motion for summary judgment had been fully briefed, in addition to any prejudice to Appellees who would have to essentially prepare the case from the beginning stages to accommodate the desired approach of new counsel in litigating the case.

**{¶47}** Accordingly, we do not find that the trial court abused its discretion in overruling Appellants' Civ.R. 56(F) motion.

*b. Appellees' Motion for a Protection Order and Motion to Quash*

**{¶48}** Nearly a year after the trial court overruled Appellants' aforementioned motion to compel, new counsel for Appellants' filed subpoenas seeking similar information from the attorney who drafted Jake's prior wills and handled his estate planning. Appellants also filed subpoenas for certain financial

institutions and insurance companies seeking information regarding inter vivos transfers made by Jake.[2]

**{¶49}** In response, Appellees filed motions for a protection order and to quash the subpoenas, arguing that Appellants were attempting to circumvent the prior discovery rulings issued by the trial court. In turn, Appellants filed a response attempting to relitigate the discovery issues resolved by the trial court's October 22, 2015 Judgment Entry.

**{¶50}** In its judgment entry ruling on Appellees' requests for a protection order and to quash the subpoenas, the trial court again recited the prior procedural status of the case which had been ongoing for a year and several months. The trial court further noted that it had delayed its ruling on the pending summary judgment motion to allow more time for settlement discussions. With regard to discovery, the trial court observed that neither party had requested leave of court to engage in further discovery since their representations to the trial court that they were prepared to proceed to trial in February 2016 before the intervening appeal on the unrelated discovery matter was filed.

**{¶51}** Consistent with its ruling on the motion for summary judgment, the trial court granted the Appellees' motion for a protective order, in part, as it related

---

[2] Notably, this second set of subpoenas appears, in part, to corresponded to the claim that Appellants' new counsel attempted to assert in the amended complaint. As previously indicated, the trial court denied Appellants leave to file the amended complaint in large part due to untimeliness.

to the issue of the validity of Jake's Last Will and Testament and his testamentary capacity to execute the August 15, 2014 Will. However, the trial court overruled the Appellees' motion for a protective order as it related to discovery on the issue of undue influence, which remained to be tried before the jury.

{¶52} The trial court granted Appellees' motion to quash the subpoenas for the attorney who drafted Jake's August 15, 2014 Will on the same grounds that it had stated in its October 22, 2015 discovery ruling. The trial court also quashed the subpoenas for financial institutions and insurance companies on the grounds that Appellants had not requested leave of court to "re-engage" in further discovery from a "non-party" and "have had nearly two years to discover the assets of the decedent and have waived such process through inaction." (Doc. No. 100 at 4).

{¶53} On appeal Appellants' attempt to liken this case to *Mauzy et al., v. Kelly Services, Inc., et al.*, 75 Ohio St.3d 578 (1996), in which the Supreme Court of Ohio found that the trial court unreasonably denied the plaintiff pretrial opportunity to fully prepare her age discrimination case for litigation. However, a review of *Mauzy* reveals that the Supreme Court's ruling on the discovery issue was dependent upon facts that are not present in this case. For example, in *Mauzy*, new counsel was retained shortly after the motion for summary judgment was filed and before any response was filed. Moreover, the Supreme Court reversed the grant of summary judgment finding: that the record disclosed further discovery was

warranted in order to fully prepare to litigate certain issues, that the discovery request of new counsel was not "interposed as a dilatory tactic," and that the plaintiff's initial request for additional discovery was timely. *Mauzy* at 592.

{¶54} As previously discussed in addressing Appellants' Civ.R. 56(F) motion, the factors relied upon by the Supreme Court in *Mauzy* are not present in the instant case. Additionally, as noted by the trial court, the subpoenas requested by Appellants sought to re-litigate discovery matters that had already been resolved and attempted to further delay the proceedings without sufficient explanation for why the materials could not have been previously obtained.

{¶55} In sum, the record reflects that after entering the case new counsel attempted to file a series of pleadings and motions that would have effectively "reset" the clock on the litigation, pleadings, and the discovery process. However, the retention of new counsel alone does not generally reset the litigation schedule for dispositive motions in a civil matter. Accordingly, we cannot conclude that the trial court's handling of the discovery matters in this case amounted to an abuse of discretion that prejudicially affected the substantial rights of Appellants. For all these reasons, the first assignment of error is overruled.

Case No. 17-17-03

*Second Assignment of Error*

**{¶56}** In their second assignment of error, Appellants assert that the trial court improperly granted summary judgment on their claim that Jake did not possess the requisite testamentary capacity when he executed the August 15, 2014 Will.

*Standard of Review*

Ohio Rule of Civil Procedure 56(C) provides in part that:

> **Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.**

The Supreme Court of Ohio has explained:

> **Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc*. (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op. 3d 466, 364 N.E.2d 267. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996-Ohio-107, 662 N.E.2d 264.**

*Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10.

**{¶57}** In determining whether to grant a motion for summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts."

-23-

*Byrd* at ¶ 25. We review a trial court's decision on summary judgment *de novo*, and we apply the same standards as the trial court. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12; *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

*Testamentary Capacity*

{¶58} The burden of proof in determining the lack of testamentary capacity is on the party contesting the will. *Kennedy v. Walcutt*, 118 Ohio St. 442 (1928), paragraph six of the syllabus, overruled on other grounds, *Krischbaum et al. v. Dillon*, 58 Ohio St. 3d 58 (1991). Section 2107.74 of the Revised Code creates a presumption of the validity of a will, and included in this presumption is that the testator was of sound mind and possessed testamentary capacity to execute the will. *Doyle v. Schott*, 65 Ohio App.3d 92, 94 (1989). The law recognizes that a testator whose mind is impaired "by disease or otherwise" can still have capacity to make a will. *West v. Knoppenberger*, 16 Ohio C.D. 168, 179 (Ohio Cir.Ct.1903).

{¶59} Testamentary capacity exists when the testator has sufficient mind to: (1) understand the nature of the business in which he is engaged; (2) comprehend generally the nature and extent of the property which constitutes his estate; (3) hold in his mind the names and identity of those who have natural claims on his bounty; and (4) appreciate his relation to the members of his family. *Niemes v. Niemes*, 97 Ohio St. 145, (1917) paragraph four of the syllabus.

**{¶60}** The general rule is "[t]he mental condition of the testator at the time of making a will determines the testamentary capacity of the testator." *Oehlke v. Marks*, 2 Ohio App.2d 264, 265-66 (1964). Evidence of the testator's condition " within a reasonable time before and after the making of the will is admissible as throwing light on his mental condition at the time of the execution of the will in question. " *Id*. What constitutes a "reasonable time" depends on the circumstances of the particular case. *Id.* at 266.

*1. Evidence of Testamentary Capacity Prior to Summary Judgment*

**{¶61}** Appellees filed their motion for summary judgment on December 29, 2015. With regard to Jake's testamentary capacity at the time he executed the August 15, 2014 Will, Appellees attached an affidavit of Dr. Cheryl Mann who treated Jake as a patient during the last thirteen years of his life and made a social visit to Jake at the nursing home a few weeks prior to his death on September 6, 2014—approximately the same timeframe during which he executed the contested August 15, 2014 Will. In the affidavit, Dr. Mann recalled spending approximately twenty minutes with Jake during the social visit. She stated that Jake "recognized my husband and me without prompting. He called us by name. He initiated appropriate conversation regarding farming, the weather, etc., and responded appropriately to comments we made." (Doc. No. 43, Ex. 1). Dr. Mann further averred her opinion "to a reasonable degree of medical probability, that Mr. [Jake]

Zimpfer had testamentary capacity when I saw him in the nursing home."  (Doc. No. 43, Ex. 1).

**{¶62}** In response to the motion for summary judgment, Appellants filed their memorandum in opposition and attached the affidavit of Appellant, Courtney Zimpfer, in which she stated that she and her brother, Appellant Blake Zimpfer, maintained a close relationship with Jake leading up to his death.  Courtney stated that she and Blake had visited Jake in the nursing home, but did not specify when the visits occurred within Jake's several months stay in the nursing home or the timeframe relative to him executing the August 15, 2014 Will.

**{¶63}** Appellants also attached the affidavit of Jerry Ware, their maternal grandfather, who stated that he was a longtime friend of Jake, and recalled Jake and his wife expressing their wishes that all of their children receive equal treatment. However, Mr. Ware's affidavit provided no evidence bearing on Jake's testamentary capacity at the time he executed the August 15, 2014 Will.  Appellants also attached a "letter" from Dr. Mann clarifying the nature of her observations of Jake's competency prior to his death in her affidavit submitted with the summary judgment motion.  Dr. Mann reiterated her opinion that Jake appeared competent when she visited him in the nursing home, but emphasized that she did not visit Jake in her capacity as his physician.

{¶64} Appellees replied to the memorandum in opposition, asserting that Appellants failed to address the issue of testamentary capacity in their response and thus only the issue of undue influence remained for trial. Appellees also argued, among other things, that Dr. Mann's "letter" was inadmissible on multiple grounds. Despite the full briefing of the summary judgment motion, the intervening appeal on the unrelated discovery matter abruptly halted the trial court's ability to rule on the motion.

*2. Appellants' "Supplemental" Response*

{¶65} Several months later, new counsel for Appellants was retained and filed the Civ.R. 56(F) motion to extend the time to respond to the motion for summary judgment, which we addressed in the first assignment of error. While this motion was still pending and without leave of court, Appellants filed "Plaintiffs' Supplement to Memorandum in Opposition to Defendant's Motion for Summary Judgment." In this "supplement" new counsel for Appellants attempted to provide redress for the lack of argument and/or evidence related to Jake's testamentary capacity in the previous response filed with the court by prior counsel.

{¶66} Appellants attached to their "supplement" another affidavit from Dr. Cheryl Mann, which was consistent with her "letter" submitted with Appellants' prior response to the summary judgment motion, but was now in proper affidavit form. With respect to Jake's testamentary capacity to execute the August 15, 2014

Will, Dr. Mann essentially recanted her "expert" opinion in her "supplemental" affidavit by now stating that based upon the "legal definition of competency" she "cannot say to a reasonable degree of medical probability that [Jake] was or was not competent" the last time she saw him. (Doc. No. 86, Apx. at 2).

{¶67} In the "supplement," Appellants also attached their own self-serving affidavits now attempting to address Jake's testamentary capacity. Courtney averred that she had "regular contact" with Jake in the nursing home and she claimed to have observed "a significant decline" in his mental and physical health. Courtney recalled that Jake would call her by her cousin's names until she corrected him. Blake also submitted a similar affidavit stating that Jake called him by his cousin's or his father's names when he visited Jake in the nursing home. Blake specifically recalled Jake forgetting previous conversations or asking him about things that happened in the past as if they were still ongoing.

{¶68} Prior to ruling on the motion for summary judgment, the trial court overruled Appellants' Civ.R. 56(F) motion for extension of time to respond to the summary judgment motion. On appeal, Appellants argue that summary judgment on their theory of Jake's "incompetency" was improper because a genuine issue of material fact remained as to Jake's testamentary capacity based entirely upon the affidavits contained in the "supplement."

{¶69} In rendering its summary judgment ruling, the trial court did not consider the affidavits contained in the "supplement," and thus only considered the affidavits submitted prior to the "supplement." The trial court stated the following regarding Appellants' testamentary capacity claim:

> **The sole evidence presented on the issue of testamentary capacity is the affidavit of Dr. Cheryl Mann. The Court accepts the affidavit most favorably to the non-moving party, and does not consider Dr. Mann as an expert witness. However, Dr. Mann's affidavit does present evidence of Jake's mental and physical condition within a reasonable time before or after his Last Will and Testament was signed on August 15, 2014.**
>
> **Having no other evidence before it on this issue of testamentary capacity, the Court finds that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion was made. Therefore, the Court concludes that the Plaintiffs have not established a genuine issue of material fact to indicate that Jake failed to possess the necessary testamentary capacity on August 15, 2014 within the meaning of *Niemes*. The Motion for Summary Judgment on the issue of testamentary capacity is therefore SUSTAINED.**

(Doc. No. 89 at 4).

{¶70} At the outset we find no abuse of the discretion by the trial court in not considering the "supplement" and attached affidavits in its ruling on summary judgment given the fact that the "supplement" was filed without leave of court and in light of the fact that the trial court overruled Appellant's Civ.R. 56(F) motion to permit the response. Moreover, in conducting our *de novo* review, we find no error in the trial court's determination that Appellants failed to present any evidence

sufficient to meet their burden in proving that Jake lacked the testamentary capacity at the time he executed the August 15, 2014 Will, or to rebut the presumptive validity of the contested will. Thus, the *only* evidence properly before the trial court regarding Jake's testamentary capacity was the affidavit of Dr. Mann who stated that she visited Jake within the approximate timeframe that he executed the August 15, 2014 Will and observed him to be competent.

**{¶71}** Moreover, even assuming *arguendo* that the affidavits contained in the "supplement" had been properly filed, they also fail to demonstrate that Jake did not possess the requisite soundness of mind *at the time he executed the August 15, 2014 Will*. *See Martin v. Dew*, 10th Dist. Franklin No. 03AP-734, 2004-Ohio-2520, ¶ 19 (stating that it is not enough to show that the testator had deteriorating health, even if the testator suffered from poor medical health at the time the documents were executed. Appellant must also show that the health decline *actually affected the testator's capacity to execute the will*). Chelsea's and Blake's affidavits indicate no specific timeframe for when they visited Jake within the several month period that he had lived in the nursing home. Thus, we cannot discern whether their affidavits are relevant evidence of Jake's mental and physical condition within a reasonable time before and after Jake's execution of August 15, 2014 Will. Moreover, the testimony at trial from the attorney who drafted the contested will and one of the

witnesses to the signing of the contested will establish that Jake had the requisite testamentary capacity when he executed the document.

{¶72} Accordingly, we do not find that the trial court erred in granting Appellees' motion for summary judgment regarding the claim that Jake lacked the requisite testamentary capacity to execute the August 15, 2014 Will. Therefore, the second assignment of error is overruled.

{¶73} Based on the foregoing, the assignments of error are overruled and the judgments are affirmed.

*Judgments Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**