[Cite as *In re Estate of Pursell v. Pursell*, 2023-Ohio-2531.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE: THE ESTATE OF:
PAUL R. PURSELL, SR., ET AL.,

     PLAINTIFFS-APPELLEES,          CASE NO. 1-23-04
     -and-

CHRISTY T. PURSELL, ET AL.,

     PLAINTIFFS-APPELLANTS,

     v.                         O P I N I O N

PAUL R. PURSELL, JR.,

     DEFENDANT-APPELLEE.

---

**Appeal from Allen County Common Pleas Court**
**Probate Division**
**Trial Court No. 2020 ES 276(A)**

**Judgment Affirmed**

**Date of Decision: July 24, 2023**

---

APPEARANCES:

    *Jonathan D. Balcerzak and John P. Lewandowski* **for Appellants**

    *Melissa R. Sherrick* **for Appellee**

**WALDICK, J.**

{¶1} Plaintiffs-appellants Paula Ann Augsburger, Christy T. Pursell, and Opal L. Wright ("Appellants')[1], bring this appeal from the December 30, 2022, judgment of the Allen County Common Pleas Court, Probate Division, dismissing their complaint after awarding summary judgment to defendant-appellee, Paul R. Pursell, Jr. ("Appellee"). On appeal, Appellants contend that the trial court erred by determining that no genuine issues of material fact existed with regard to whether the parties' father, Paul Pursell, Sr. ("Decedent"), lacked testamentary capacity when he executed a will in 2014, and that the trial court erred by determining that no genuine issues of material fact existed with regard to whether Decedent was unduly influenced by Appellee in executing the 2014 will. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} Appellants and the Appellee are all children of Decedent. Decedent retired from Ford and his wife of nearly fifty years managed farmland that was in her name until her death in October 2013.[2] Decedent was the executor of his wife's estate.

---

[1] Appellant Paula is now deceased and she provided no evidence in this case. She was estranged from Decedent long before the will at issue was drafted. Where we refer generally to "Appellants" providing evidence or testimony herein, we are referring to Appellants Christy and Opal.

[2] Decedent's wife was the mother of Appellants Christy and Opal, but not Appellant Paula.

Case No. 1-23-04

{¶3} In November of 2013, approximately three weeks after his wife died, Decedent met with a UAW Legal Services Plan attorney ("UAW attorney") to prepare a new will; however, he ultimately decided to take time to grieve before having the new will prepared. Decedent resumed his interactions with a UAW attorney in early 2014, discussing the drafting of his new will.

{¶4} As part of his new will, Decedent wanted all of his personal property and the residue of his estate to go to Appellee, if Appellee survived Decedent. If Appellee did not survive Decedent, then Decedent wanted everything to go to Appellant Christy Pursell. Decedent told the UAW attorneys, *inter alia*, that he wanted to leave everything to Appellee because Appellants had plenty of money and jobs and Appellee did not.[3] Further, Decedent indicated that he had provided for the Appellants during his life, with the exception of Paula. Based on Decedent's wishes, the UAW attorneys drafted the will and set a signing date.

{¶5} On September 9, 2014, Appellee drove Decedent to Decedent's appointment for the will signing. Appellee was forced to wait outside while the UAW attorney met with Decedent and confirmed all the information in the will. Decedent ultimately executed the will in front of the UAW attorney and another witness.

---

[3] Again, this excludes Appellant Paula, as Decedent had no relationship with her and she was excluded from his prior will.

-3-

{¶6} Several years passed in which there were varying degrees of family strife. At one point, Decedent banned Appellants from his property, though that did not last for the rest of Decedent's life. One of Decedent's friends also averred that while Decedent had a good relationship with Appellee for years, that relationship was strained toward the end of Decedent's life.

{¶7} Decedent died on June 9, 2020. Following his passing, Appellants learned of the will and filed a complaint challenging its legitimacy. Appellants alleged that Decedent lacked testamentary capacity to make a valid will in 2014, and that, in any event, Decedent was unduly influenced by Appellee.

{¶8} Appellee filed an answer denying the allegations and the case proceeded through discovery. Depositions were taken of Appellants Christy and Opal, as well as the Appellee.

{¶9} On October 26, 2021, Appellee filed a motion for summary judgment contending that there were no genuine issues of material fact and that Appellee was entitled to judgment as a matter of law. Appellee supported his motion with copies of the deposition transcripts and, *inter alia*, the affidavit of the UAW attorney who met with Decedent on September 9, 2014. The attorney averred that Appellee was not present in the room when the will was executed, that it was her standard practice to determine that the testator was of sound mind and memory, and that it was her

standard practice to determine that the testator was signing willingly and not under any restraint.

**{¶10}** Appellants filed a memorandum in response, arguing, *inter alia*, that Decedent struggled with some of his own financial affairs after his wife died and that he had the assistance of an attorney when he was administering his wife's estate, showing a possible lack of testamentary capacity. Further, Appellants alleged that numerous incidents in the years after the will was signed established that Appellee was taking advantage of Decedent, and, separately, that Appellee told Decedent lies about the Appellants. According to the Appellants, this had to be the reason that Decedent removed them from his will.

**{¶11}** Appellee filed a reply in support of his motion for summary judgment, adding the notes from the meetings the UAW attorneys had with Decedent. The notes indicated that UAW attorneys confirmed with Decedent on multiple occasions that he specifically did not want to leave anything to the Appellants. (Doc. No. 58, Ex. A).

**{¶12}** On December 30, 2022, the trial court filed a lengthy judgment entry analyzing the issues raised by the Appellants. The trial court determined that there was no actual evidence that Decedent lacked testamentary capacity on September 9, 2014, when he executed the will in question, and, in fact, the only evidence supported a finding that Decedent was of sound mind at that time. Further, the trial

court determined that there was no evidence beyond the speculations of Appellants that Decedent was unduly influenced. Based on its conclusions, the trial court granted Appellee's motion for summary judgment and dismissed the Appellants' complaint. It is from this judgment that the Appellants' appeal, asserting the following assignments of error for our review.

**First Assignment of Error**

**The Trial Court erred in finding that no genuine issue of material fact exists as to whether the Decedent was unduly influenced by the Defendant.**

**Second Assignment of Error**

**The Trial Court erred in finding that no genuine issue of material fact exists as to whether Decedent held testamentary capacity when he executed the 2014 Will.**

{¶13} For ease of discussion, we will review the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶14} In their second assignment of error, Appellants argue that the trial court erred by determining that there was no genuine issue of material fact regarding whether Decedent lacked testamentary capacity when he executed the 2014 will.

Standard of Review

{¶15} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without

deference to the trial court's determination." *ISHA*, *Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25.

{¶16} Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Whittaker v. Lucas County Prosecutor's Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, ¶ 8. Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.* quoting *Anderson* at 251-252.

{¶17} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 282 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292.

"The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.* citing *Dresher* at 292.

Relevant Authority

**{¶18}** Revised Code 2107.74 creates a presumption of the validity of a will admitted to probate. Included in this presumption is that the testator was of sound mind and possessed testamentary capacity to execute the will. *Zimpfer v. Roach*, 3d Dist. Shelby No. 17-17-03, 2017-Ohio-8437, ¶ 58.

**{¶19}** However, an otherwise valid will may be invalidated if the party contesting the will can establish that the testator lacked testamentary capacity at the time the will was executed. *Niemes v. Niemes*, 97 Ohio St. 145 (1917), paragraph four of the syllabus. Evidence of the testator's mental and physical condition, both at the time the will is executed and within a reasonable time before and after its execution, is admissible as casting light on testamentary capacity. *Kennedy v. Walcutt*, 118 Ohio St. 442 (1928), paragraph two of the syllabus, overruled on other grounds, *Krishbaum v. Dillon*, 58 Ohio St.3d 58 (1991).

**{¶20}** Testamentary capacity exists when the testator has sufficient mind and memory to: 1) understand the nature of the business in which the testator is engaged; 2) comprehend generally the nature and extent of the testator's property; 3) hold in the testator's mind the names and identities of those who have natural claims upon

his bounty; and 4) appreciate the testator's relation to members of his family. *Niemes*, *supra*.

Analysis

**{¶21}** At the outset, we emphasize that a presumption was created in this matter that the will was valid and that Decedent had the requisite testamentary capacity to execute the will once the will was admitted to probate. *See* R.C. 2107.74; *Zimpfer*, *supra*, at ¶ 58. In Appellants' attempt to rebut the presumption, Appellants point to statements in the record indicating that Decedent was deeply distraught by his wife's death, that he was in a "steady cognitive decline" before and after he executed the 2014 will as exhibited by Decedent often writing notes to himself, and that Decedent needed assistance with his bills and finances after his wife died.

**{¶22}** Importantly, however, both before, during, and after the execution of the 2014 will, there was never any challenge to Decedent's competency. In fact, Appellant Opal testified that up until his death, Decedent was "healthy as a horse." (Opal Wright Depo. at 7). Further, it is undisputed that Decedent was executor of his wife's estate, and that Decedent managed the farm business after his wife died, securing better pricing for renting the farmland.

**{¶23}** Notwithstanding these points, focusing strictly on the time the will was executed, and a reasonable time before and after, the only evidence in the record supports Decedent having testamentary capacity in this matter. Decedent met with

a UAW attorney shortly after his wife's death about updating his will, but specifically indicated he wanted more time to grieve before he did so.

{¶24} Then, months later, Decedent met with a UAW attorney again about altering his will. At that time, according to the notes of the UAW attorney, Decedent discussed numerous matters with the UAW attorney including his children, his assets, his land, his vehicles, his bank accounts, and who he wanted to be his executor. Decedent informed the UAW attorney that he wanted Appellee to be his executor, unless Appellee predeceased him, and he wanted all his property and the residue of his estate to go to Appellee. Decedent specifically stated he did not want to give anything to Appellant Opal because she and her husband owned farms and had numerous homes, and he stated that they did not need anything more. As to Christy, Decedent said she had plenty of money and a job so she did not need anything. Decedent had no relationship with Appellant Paula, and did not want anything to go to her. This conversation, which occurred when Appellee was not present, establishes that Decedent was aware of his assets and his heirs.

{¶25} In the months following this meeting, the will was drafted, and after some delay, a signing was scheduled for September 9, 2014. Prior to the will being signed, another UAW attorney took over the case. She spoke with Decedent the day before the scheduled will signing, specifically asking him about his decision to disinherit his daughters. Decedent reaffirmed his commitment to disinherit his

daughters, stating that he was doing it because of things that they had done, and because Christy had been taken care of "material wise." Decedent thus again demonstrated a knowledge of his heirs and his assets prior to executing the will.

**{¶26}** As to the day of the execution of the will itself, Appellee drove Decedent to the will-signing appointment on September 9, 2014. Appellee indicated that his father was in good health on the day of the signing. He testified that he dropped Decedent off at the office and then went to Kewpee, a local hamburger shop. The UAW attorney confirmed that Appellee was not present when the will was signed, and she averred as follows with regard to the signing itself.

> **7. The practice of our office was that those witnessing a will execution were to confirm the identity and age of the testator/testatrix; confirm that the testator/testatrix had read it, understood it, and was of sound mind and memory, and that the testator/testatrix was signing the Last Will & Testament willingly and not under restraint.**
>
> **8. If a client arrived with another person for a signing appointment, I had a standard practice while at the UAW Legal Services Plan of not permitting the other person in the room while the testator/testatrix executed a Last Will & Testament.**
>
> **9. I saw Paul R. Pur[s]ell, Sr. sign the subject Last Will and Testament of Paul R. Pur[s]ell, Sr. on September 9, 2014 as did the other witness, Rosemary Perez.**

**{¶27}** Given the UAW attorney's uncontested evaluation of Decedent on the date of the will signing, all of the evidence in the record points to Decedent having testamentary capacity both before the execution of the will and during the execution

of the will. Thus the only question remaining is whether Appellants presented any evidence that Decedent lacked testamentary capacity within a reasonable time after the execution of the will, and there is no evidence specifically indicating that Decedent had any cognitive issues that impacted his ability to execute the 2014 will.

**{¶28}** In sum, the Appellants' allegations that Decedent was sometimes forgetful do not undermine Decedent's testamentary capacity on or around September 9, 2014 as attested to by the UAW attorney. *See Zimpfer v. Roach*, 3d Dist. Shelby No. 17-17-03, 2017-Ohio-8437, ¶ 70 (where the only evidence in the record was an affidavit indicating that decedent was competent when the will was signed, summary judgment is proper, particularly given the presumption of validity). After reviewing all the evidence, the trial court found that the Appellants had produced no actual evidence that Decedent lacked testamentary capacity in executing the will in question. In our own de novo review, we agree with the trial court. Therefore, Appellants' second assignment of error is overruled.

*First Assignment of Error*

**{¶29}** In their first assignment of error, Appellants argue that a genuine issue of material fact existed as to whether Decedent executed his will under undue influence of the Appellee.

Relevant Authority[4]

**{¶30}** Undue influence occurs when the wishes and judgment of the transferor are substituted by the wishes and judgment of another. *Thomas v. Delgado*, 3d Dist. Putnam No. 12-22-06, 2022-Ohio-4235, ¶ 26. To prove undue influence, a party must establish by clear and convincing evidence that "(1) the testator was susceptible to undue influence, (2) another person had an opportunity to exert influence over the susceptible testator, (3) improper influence was exerted or attempted and (4) a result showing the effect of such influence." *Id.* We note that undue influence need not be shown by direct proof, but can be inferred from the circumstances. *Id.* citing *Calloway v. Roy*, 10th Dist. Franklin No. 77AP-301, 1997 WL 200400, * 3.

Analysis

**{¶31}** Appellants contend that they presented evidence that should have defeated summary judgment on the issue of undue influence. Further, Appellants actually argue that a *presumption* of undue influence should have been applied in this case because Appellee had a fiduciary relationship with Decedent when he was granted a Power of Attorney ("POA") when the will was executed. *See Thomas v. Delgado*, 3d Dist. Putnam No. 12-22-06, 2022-Ohio-4235, ¶ 26.

---

[4] The same standard of review used previously is applicable here.

{¶32} At the outset, we disagree with Appellants' assertion that under *Thomas* a presumption of undue influence should be applied here because Appellee was granted POA of Decedent. *Thomas* is readily distinguishable because in this case, the POA was not granted to Appellee until the will was executed. Thus Appellee could not have abused a fiduciary relationship that he did not yet have in order to induce Decedent to execute the 2014 will.[5] Moreover, we have no knowledge of what the POA entailed or if it was ever even used. Finally, *Thomas* also specifically involved a claim of intentional interference with the expectancy of an inheritance, which is not a claim alleged in this case. Thus a presumption of undue influence will not be applied here.

{¶33} With the determination made that a presumption of undue influence should not be applied here, we will review the evidence submitted by the Appellants and their arguments with regard to undue influence. Appellants first contend that Decedent was susceptible to undue influence because Decedent was taken to his initial meeting with the UAW attorney to discuss his will by Appellee approximately three weeks after Decedent's wife died, when Decedent was still grieving. Appellants argue that Decedent's wife handled all aspects of the couple's daily life, including finances, to such an extent that Decedent could not even write a check.

---

[5] According to the affidavit of Tom Bradshaw, Decedent terminated Appellee's POA at some unknown date.

**{¶34}** Although Appellants suggest that Decedent's grief made him susceptible to undue influence, there is no evidence of that in the record. In fact, Decedent delayed making his new will specifically so he could take time to grieve. In addition, the record establishes that while Appellee drove Decedent to his meetings with the UAW attorney, Appellee was not involved with the discussions regarding the will.

**{¶35}** As to Appellants' claims that Decedent was susceptible to undue influence because his wife handled the couple's finances, Decedent was able to manage his wife's estate. In addition, Decedent took over management of the farmland and secured *better* pricing than his wife had. The actual evidence regarding Decedent's ability to manage his affairs does not point to susceptibility.

**{¶36}** Next, Appellants argue that Decedent was susceptible to undue influence as illustrated by Appellee "misusing" Decedent's money. Appellants argue that this showed that Decedent was susceptible to manipulation.

**{¶37}** Notably, there is some evidence to support Appellants' claims that Appellee *used* Decedent's money through the affidavits of Bob Rieman and Tom Bradshaw. Both individuals, friends of Decedent, indicated that Decedent showed them bank account statements wherein Appellee was withdrawing over $800 per month from a bank account for a personal loan, separate from Appellee's regular expenses. While this evidence could be troubling if certain other facts were present,

it is important to emphasize that Appellee had a joint bank account with his parents *even while his mother was still alive*. The evidence indicated Decedent and his wife paid for many of Appellee's expenses, and according to the UAW attorney's notes, Decedent was clearly concerned with Appellee's ability to provide for himself—a concern he did not have for Appellants Opal or Christy. Moreover, Appellee also testified in his deposition that he contributed money to the joint account while he was working.

{¶38} Furthermore, there is no time frame indicating when Appellee's purported withdrawals were made from the joint bank account, which could have been long after the will was executed and irrelevant to the question of undue influence at the time the will was executed. Thus we have no evidence that the money was actually *misused*, or when it was used it all. But, even assuming Appellee did misuse some funds, there is no evidence that when he did he was exerting undue influence *in the execution of the will*. *Young v. Bellamy*, 5th Dist. Delaware No. 16CAF110051, 2017-Ohio-2994, ¶ 19 (stating undue influence must be present at the time of the execution of the will resulting in dispositions which the testator would not otherwise have made.) The actions of Appellee after the execution of the will are simply not relevant to a determination of undue influence.

{¶39} Appellants next argue that Appellee had the opportunity to influence Decedent and that he did, in fact, exert his influence to get Decedent to change his

will so that he was the only beneficiary. Appellants contend that after Decedent's wife died, Decedent needed assistance with his finances and with running errands. Further, Appellants indicate that Appellee saw Decedent almost daily. In addition, Appellants assert that Appellee was a liar, who was always making up stories. For example, Appellant Christy testified that at Decedent's funeral Appellee told "unbelievable stories all the time" such as being "attacked by 6 guys dressed like Ninja's [sic]." (Christy Pursell Depo at 23). Christy also testified that Appellee told his niece that he wrestled a bear once, but it had a muzzle on its face. Appellants also indicated that Appellee fabricated a story that the Appellants were going to put Decedent in a nursing home.

{¶40} Again, however, at best it is unclear when these statements were allegedly made, and some of the statements were definitely made several years after the 2014 will was executed. Appellants' assertions that Appellee is a liar and that he could be manipulative does not establish that he exerted any "undue" influence on Decedent, particularly when compared to the unequivocal statement of the UAW attorney who indicated she spoke with Decedent and determined that he was executing his will freely.[6]

---

[6] We note that pursuant to the affidavit of Bob Rieman, presented by Appellants, during the last years of Decedent's life, his relationship with Appellee was strained, but the two had been close prior to that. Even with this purportedly "strained" relationship with Appellee in his later years, Decedent never decided to alter his will. Decedent's friend asserted that he had conversations with Decedent toward the end of Decedent's life that led him to believe that a new will had been made subsequent to the 2014 will. However, there is no other evidence of this will. Decedent's friend implied that Appellee disposed of the will when he gained access to Decedent's residence after Decedent passed to look for "important papers." Notwithstanding this

**{¶41}** Importantly, we have already determined that there was no evidence that Decedent lacked the mental capacity to understand the will he executed in 2014. That the will may be considered unfair by the Appellants does not directly indicate that Decedent did it with a lack of understanding or under undue pressure. It is important to emphasize that influence alone is not enough to establish undue influence, the influence must be "undue" and *induce* the testator to act contrary to his wishes. *Fikes v. Estate of Fikes*, 5th Dist. Hamilton No. C-210515, 2022-Ohio-2075, ¶ 9. We simply have no evidence of that here.

**{¶42}** Upon reviewing the record, the trial court found that the only evidence of undue influence was speculation by the Appellants, which was not sufficient to establish a genuine issue of material fact with regard to undue influence. After our *de novo* review, we agree with the trial court. Appellants attempt to point to instances that occurred well after the execution of the 2014 will to show that undue influence had occurred, but these later assertions and family squabbles do nothing to alter the analysis. Therefore, Appellants' first assignment of error is overruled.

---

point, the "general rule * * * is that declarations of the testator not made contemporaneously with the execution of the will or so near thereto as to constitute a part of the *res gestae* are not admissible as substantive proof of the fact of undue influence." *See West v. Henry*, 173 Ohio St. 498, 502.

*Conclusion*

**{¶43}** Having found no error prejudicial to Appellants in the particulars assigned and argued, the judgment of the Allen County Common Pleas Court, Probate Division, is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**