[Cite as *In re Parrett v. Wright*, 2017-Ohio-764.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF: :
RICHARD L. PARRETT :
: C.A. CASE NO. 2015-CA-96
Plaintiff-Appellant :
: T.C. NO. 20150118A
v. :
: (Civil appeal from Common
EDWARD D. WRIGHT, EXECUTOR : Pleas Court, Probate Division)
:
Defendant-Appellee :
:
. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___3rd___ day of _____March_____, 2017.

. . . . . . . . . .

DAVID D. HERIER, Atty. Reg. No. 0068990, 451 Upper Valley Pike, Springfield, Ohio 45504
    Attorney for Plaintiff-Appellant

WILLIAM D. WEST, Atty. Reg. No. 0018465, 20 S. Limestone Street, Suite 120, Springfield, Ohio 45502
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Richard L. Parrett appeals a decision of the Clark County Court of Common Pleas, Probate Division, dismissing his complaint to set aside an antenuptial agreement he entered into with his now deceased wife, Ellen Schwartz

Parrett, and finding that said agreement was valid and enforceable. Richard filed a timely notice of appeal with this Court on October 22, 2015.

{¶ 2} The record establishes that on June 20, 2005, Richard and Ellen entered into an antenuptial agreement (hereinafter "the agreement"). Neither party was represented by an attorney when they entered into the agreement. The agreement itself was drafted by Ellen's son and the executor of her estate, defendant-appellee, Edward W. Wright. On the same day, the agreement was hand carried to a clerk in the Clark County Probate Court who notarized it in a handwritten notation at the bottom of the document. The parties lived together as husband and wife until January 2, 2015, when Ellen passed away due to complications from Alzheimer's disease.

{¶ 3} On April 9, 2015, Richard filed a complaint to set aside the antenuptial agreement, arguing that he signed it under duress at the insistence of Ellen and her son, Edward. Richard also asserted that at the time he signed the agreement, he was unaware of the value and extent of Ellen's income and property, both real and personal. Thereafter, Edward filed an answer to Richard's complaint on April 27, 2015.

{¶ 4} On September 15, 2015, the matter proceeded to a trial to the bench. On September 25, 2015, the trial court issued a decision dismissing Richard's complaint and finding the antenuptial agreement to be enforceable. Specifically, the trial court found that Richard failed to meet his burden to prove that he was not sufficiently appraised of the extent of Ellen's assets at the time that the parties entered into the agreement. The trial court further found that Richard entered into the agreement voluntarily and not under duress or as a result of fraudulent inducement.

{¶ 5} It is from this judgment that Richard now appeals.

{¶ 6} Richard's sole assignment of error is as follows:

{¶ 7} "DID THE TRIAL COURT ERR IN FINDING THAT THE PLAINTIFF-APPELLANT, RICHARD L. PARRETT, HAD THE BURDEN OF PROVING A FULL DISCLOSURE OR KNOWLEDGE OF THE NATURE, EXTENT, AND VALUE OF THE OTHER SPOUSE'S PROPERTY WHEN HIS DECEASED WIFE'S EXECUTOR ATTEMPTS TO USE AN ANTENUPTIAL AGREEMENT TO COMPLETELY DISINHERIT HIM FROM HIS WIFE'S ESTATE?"

{¶ 8} In his sole assignment, Richard contends that the trial court erred when it held that the antenuptial agreement was valid and enforceable. Specifically, Richard argues that the trial court erred when it found that he "failed to meet the burden of proving *** that he was not sufficiently appraised of the assets of Ellen at the time that the Antenuptial Agreement was signed on June 20, 2005." Richard asserts that the burden was on Ellen's estate to establish that he entered into the antenuptial agreement with the benefit of full knowledge or disclosure of the assets of the proponent.

{¶ 9} An antenuptial agreement is a contract entered into between prospective spouses in contemplation and consideration of their future marriage, whereby the property rights and economic interests of either or both of the prospective spouses are determined and set forth. *Rowland v. Rowland,* 74 Ohio App.3d 415, 419, 599 N.E.2d 315 (4th Dist. 1991). These agreements may include provisions concerning the disposition or devolution of property and payments for sustenance upon the death of one or other of the spouses, or provisions for the distribution of property and the sustenance or maintenance of one or other of the spouses, upon a separation or divorce, or any combination of the concerns between the parties. *See Gross v. Gross,* 11 Ohio St.3d

99, 464 N.E.2d 500 (1984).

{¶ 10} Although antenuptial agreements are not *per se* invalid, they must meet certain minimum standards of good faith and fair dealing. *Zimmie v. Zimmie*, 11 Ohio St.3d 94, 98, 464 N.E.2d 142 (1984). The parties to an antenuptial agreement are in a fiduciary relationship to one another and, thus, are under a mandatory duty to act in good faith with a high degree of fairness and disclosure of all circumstances which materially bear on the antenuptial agreement. *Gross,* 11 Ohio St.3d at 108, 464 N.E.2d at 508; *see, also, Cohen v. Estate of Cohen*, 23 Ohio St.3d 90, 491 N.E.2d 698 (1986).

{¶ 11} The test in Ohio for the validity of an antenuptial agreement is set forth in *Gross*, paragraph two of the syllabus: "Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." The Ohio Supreme Court has also held that the validity of an antenuptial agreement is a question of fact for the trial court, and the trial court's decision will not be reversed absent an abuse of discretion. *Bisker v. Bisker*, 69 Ohio St.3d 608, 609–610, 635 N.E.2d 308 (1994).

{¶ 12} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 13} A decision is unreasonable if there is no sound reasoning process that

would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 14} When an antenuptial agreement provides disproportionately less than the party challenging it would have received under an equitable distribution, the burden is on the one claiming the validity of the contract to show that the other party entered into it with the benefit of full knowledge or disclosure of the assets of the proponent. *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 467, 628 N.E.2d 1343 (1994). This burden shifting is in derogation of traditional contract principles because ordinarily a party asserting the invalidity of a contract bears the burden of proving a defense to it. *Id*.; *see Ohio Loan & Discount Co. v. Tyarks*, 173 Ohio St. 564, 184 N.E.2d 374 (1962), paragraph two of the syllabus.

{¶ 15} In *Messer v. Messer*, 2d Dist. Darke No. 1570, 2002-Ohio-4196, we affirmed a trial court's decision invalidating the parties' antenuptial agreement. The trial court's decision was partly based on the husband's lack of disclosure of assets in the antenuptial agreement prepared by his attorney and signed by his wife two months before the parties' marriage. Therein, we stated the following:

> Furthermore, the record also supports the trial court's finding that assets were not disclosed. In this regard, *Gross* indicates that disclosure is "satisfied either by the exhibiting of the attachment to the antenuptial agreement of a listing of the assets of the parties to the agreement, or

alternatively a showing that there had been a full disclosure by other means." *Id.* at 105. The agreement in the present case did not refer to any assets, other than a house George owned at the time, nor was any list attached to the agreement. Diane testified that she was not aware of George's other assets, including retirement funds, bank accounts, or vehicles. Similarly, George testified that at the time of the agreement, he owned a house trailer, a whole life policy of insurance through GM, a GM pension, and a vehicle. Admittedly, none of these items was disclosed in the agreement. Thus, the evidence of record supports the trial court's finding that assets were not disclosed.

*Id.* at ¶ 32.

{¶ 16} Initially, we note that in its decision finding the antenuptial agreement to be valid and enforceable, the trial court improperly placed the burden on Richard of proving that he was not sufficiently appraised of Ellen's assets at the time that the parties entered into the agreement. As previously stated, when an antenuptial agreement provides disproportionately less than the party challenging it would have received under an equitable distribution, the burden is on the one claiming the validity of the contract to show that the other party entered into it with the benefit of full knowledge or disclosure of the assets of the proponent. *Fletcher*, 68 Ohio St.3d at 467. Accordingly, the burden was on Edward, as the representative of Ellen's estate, to adduce evidence which established that Richard entered into the antenuptial agreement with the benefit of full knowledge or disclosure of Ellen's assets. Only in this way would Edward be able to affirmatively establish that the antenuptial agreement was valid and enforceable against Richard.

{¶ 17} Furthermore, even if the trial court had properly placed the evidentiary burden on Edward, the record affirmatively suggests that Richard was not sufficiently appraised of Ellen's assets at the time that the parties entered into the antenuptial agreement. The parties' antenuptial agreement states in pertinent part:

*** [N]ow, therefore, in consideration of said Richard L. Parrett and Ellen J. Schwartz consummating the said contract of marriage, said Richard L. Parrett and Ellen J. Schwartz hereby agree to waive and release and forever quit claim and renounce all dower, curtesy, and other interest in and to the said *real estate and personal property* that said Richard L. Parrett and Ellen J. Schwartz *may now have or hereafter acquire by means whatever.*

***

And in consideration of the consummation of said marriage, Richard L. Parrett and Ellen J. Schwartz *hereby release, cancel and waive all claims to all property of said Richard L. Parrett and Ellen J. Schwartz to which they might be entitled as wife or widow, husband or widower.*

{¶ 18} Similar to the invalidated agreement in *Messer*, there was no attachment to the antenuptial agreement of a listing of Ellen's assets. The antenuptial agreement only generally refers to any "real estate and personal property" owned presently or in the future by either party. The antenuptial agreement in the instant case did not specifically refer to any of Ellen's assets, nor was any list attached to the agreement. Richard testified that at the time the parties entered into the antenuptial agreement that he was aware that Ellen owned the house in which she lived at 259 South Arlington Avenue in Springfield,

Ohio, the furniture in the house, and a motor vehicle. Richard also testified that he was aware that Ellen was receiving Social Security payments on a monthly basis. Other than the house, furniture, and vehicle, which were not specifically listed in the antenuptial agreement or attached documentation, Richard testified that he was unaware of any additional assets or property, real or personal, owned by Ellen at the time the agreement was executed or thereafter.

{¶ 19} Significantly, evidence was adduced that Ellen had undisclosed bank accounts at Key Bank, West Bank, and Huntington Bank. One of those bank accounts contained over $17,000.00 at the time of Ellen's passing. Richard testified that he was unaware that any of these bank accounts existed until they were revealed during discovery in the instant case. As a result of the discovery process, Richard testified that he also learned that Ellen owned an interest in two real estate properties along with one of her sons, Mark Wright. Finally, evidence was adduced that Ellen was receiving payments from the sale of Thomas Tape, a business that she co-owned with her previous deceased husband. Admittedly, none of these assets were disclosed to Richard in the antenuptial agreement or at any point thereafter. Thus, the evidence of record supports the conclusion that assets were not disclosed. *Messer* at ¶ 32.

{¶ 20} Upon review, we conclude that the trial court improperly placed the burden on Richard of proving that he was not sufficiently appraised of Ellen's assets at the time that the parties entered into the agreement.

{¶ 21} Richard's sole assignment of error is sustained.

{¶ 22} Richard's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further

proceedings consistent with the opinion.

. . . . . . . . . .

HALL, P.J., and FROELICH, J., concur.

Copies mailed to:

David D. Herier
William D. West
Hon. Richard P. Carey