[Cite as *In re Parrett v. Wright*, 2017-Ohio-9057.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF RICHARD L. PARRETT | : | |
| | : | |
| | : | Appellate Case No. 2017-CA-59 |
| *Plaintiff-Appellee* | : | |
| | : | Trial Court Case No. 20150118A |
| v. | : | |
| | : | (Appeal from Probate Court) |
| EDWARD D. WRIGHT, EXECUTOR OF THE ESTATE OF ELLEN SCHWARTZ PARRETT | : | |
| | : | |
| | : | |
| *Defendant-Appellant* | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of December, 2017.

. . . . . . . . . . .

DAVID D. HERIER, Atty. Reg. No. 0068990, 451 Upper Valley Pike, Springfield, Ohio 45504
　　　Attorney for Plaintiff-Appellee

WILLIAM D. WEST, Atty. Reg. No. 0018465, 20 South Limestone Street, Suite 120, Springfield, Ohio 45502
　　　Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Defendant-Appellant, Edward Wright, Executor of the Estate of Ellen Schwartz Wright, appeals from a judgment setting aside an antenuptial agreement entered into by the decedent and Plaintiff-Appellee, Richard Parrett. Wright outlined three issues for review, but did not state any assignments of error. Essentially, Wright appears to contend that the trial court's judgment was incorrect because Parrett entered into the antenuptial agreement freely and without fraud, duress, or coercion. Wright further contends that the trial court erred in granting Parrett additional time to exercise his rights as a surviving spouse.

**{¶ 2}** We conclude that the trial court did not abuse its discretion when it refused to enforce the antenuptial agreement, as the decedent's assets were not fully disclosed when the agreement was signed. The remaining issues are not properly before the court, and will be overruled. However, to the extent statements of the trial court in the entry regarding an extension of time for Parrett to assert various rights can be considered, Wright waived any error by failing to object in the trial court. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

**{¶ 3}** This is the second time this case has been before our court. In April 2015, Parrett filed a complaint to set aside an antenuptial agreement that he and the decedent, Ellen Schwartz Wright, had signed on June 20, 2005, prior to their marriage.[1] Parrett

---

[1] To avoid potential confusion, we will refer to the decedent as "Ellen" and to the executor of her estate as "Wright."

attached copies of the antenuptial agreement and Ellen's will to an amended complaint.

{¶ 4} The antenuptial agreement was a one-page document, which indicated generally that Ellen owned certain real estate and personal property, and that Parrett owned certain personal property. The agreement did not specify the nature of any real or personal property, nor was an exhibit or document attached that listed any assets. Per the agreement, both parties agreed to waive and release all claims of dower, curtesy, or other interest that they might have as widow or widower, and to permit property then-owned or thereafter acquired to descend to their personal heirs, unless the property was owned in their joint names.

{¶ 5} The will, which was dated October 4, 2005, left Ellen's entire estate to her children or to their issue per stirpes. In the complaint, Parrett asked that the antenuptial agreement be set aside and that he be restored to all legal, equitable, and statutory rights relative to Ellen's estate.

{¶ 6} Our prior opinion indicated that:

Neither party was represented by an attorney when they entered into the agreement. The agreement itself was drafted by Ellen's son and the executor of her estate, defendant-appellee, Edward W. Wright. On the same day, the agreement was hand carried to a clerk in the Clark County Probate Court who notarized it in a handwritten notation at the bottom of the document. The parties lived together as husband and wife until January 2, 2015, when Ellen passed away due to complications from Alzheimer's disease.

*Parrett v. Wright*, 2017-Ohio-764, 85 N.E.3d 1067, ¶ 2 (2d Dist.).

**{¶ 7}** On April 27, 2015, Wright filed an answer to the complaint. His answer did not raise any defenses. Instead, Wright simply denied the allegations in the complaint. During the initial proceeding, Parrett sent interrogatories to Wright and also issued subpoenas for bank records. See Doc. #s 10, 11, 12, and 13.

**{¶ 8}** On September 15, 2015, the trial court conducted a bench trial. The court then filed a decision on September 25, 2015, concluding that Parrett had failed to meet his burden of proving that he was not sufficiently informed of Ellen's assets when he signed the agreement. Parrett timely filed a notice of appeal with our court, and, after review, we reversed the trial court's decision. We concluded that the trial court had improperly placed the burden on Parrett when Wright had the burden, "as the representative of Ellen's estate, to adduce evidence which established that Richard entered into the antenuptial agreement with the benefit of full knowledge or disclosure of Ellen's assets." *Id.* at ¶ 16, citing *Fletcher v. Fletcher*, 68 Ohio St. 3d 464, 467, 628 N.E.2d 1343 (1994).

**{¶ 9}** We further concluded that, "even if the trial court had properly placed the evidentiary burden on Edward, the record affirmatively suggests that Richard was not sufficiently appraised of Ellen's assets at the time that the parties entered into the antenuptial agreement." *Id.* at ¶ 17. In this regard, we noted several points. First, the antenuptial agreement did not specifically refer to any of Ellen's assets, and no list of assets was attached to the agreement. *Id.* at ¶ 18. We then noted the following facts:

Richard testified that at the time the parties entered into the antenuptial agreement that he was aware that Ellen owned the house in which she lived at 259 South Arlington Avenue in Springfield, Ohio, the furniture in the

house, and a motor vehicle. Richard also testified that he was aware that Ellen was receiving Social Security payments on a monthly basis. Other than the house, furniture, and vehicle, which were not specifically listed in the antenuptial agreement or attached documentation, Richard testified that he was unaware of any additional assets or property, real or personal, owned by Ellen at the time the agreement was executed or thereafter.

Significantly, evidence was adduced that Ellen had undisclosed bank accounts at Key Bank, West Bank, and Huntington Bank. One of those bank accounts contained over $17,000.00 at the time of Ellen's passing. Richard testified that he was unaware that any of these bank accounts existed until they were revealed during discovery in the instant case. As a result of the discovery process, Richard testified that he also learned that Ellen owned an interest in two real estate properties along with one of her sons, Mark Wright. Finally, evidence was adduced that Ellen was receiving payments from the sale of Thomas Tape, a business that she co-owned with her previous deceased husband. Admittedly, none of these assets were disclosed to Richard in the antenuptial agreement or at any point thereafter. Thus, the evidence of record supports the conclusion that assets were not disclosed.

*Parrett*, 2017-Ohio-764, 85 N.E.3d 1067, at ¶ 18-19.

{¶ 10} Accordingly, we reversed the trial court's judgment and remanded the case for further proceedings consistent with our opinion. *Id.* at ¶ 22. No appeal was taken from our judgment.

{¶ 11} On remand, the trial court held both a review conference and a status conference. Wright and his family indicated they did not agree with our appellate decision and wished to present additional evidence. Parrett stated that he would be satisfied with filing a short brief. He also said he would ask to be treated as the surviving spouse and elect to take against the will as our appellate opinion would appear to require and as had been reserved in the complaint he originally filed.

{¶ 12} The trial court then set a hearing for May 22, 2017, at which time Wright called Parrett as a witness. Two items of additional evidence were presented at this hearing. The first was that Parrett had received $105,000 from a pension buyout in 1997, and had placed this amount with New York Life Insurance. Parrett either did not tell Ellen or did not recall telling Ellen this information before the antenuptial agreement was signed.

{¶ 13} The second item was a 2005 joint tax return that was dated March 16, 2006, i.e., more than a year after the marriage. This tax return indicated that Ellen had received interest income from three bank accounts. The income included $7.00 from Westbanco, $1,292.00 from Home City Federal Bank, and $327.00 from Huntington Bank. The joint return also showed $18.00 in interest from a bank account belonging to Parrett. Other than the interest income, the parties had income from their social security checks and about $1,040 in gross income from Richard's sole proprietorship. $147 in self-employment tax was paid on Richard's net profit from this venture. This was the total income tax paid for 2005, because the parties' joint social security income was low, and their only other reported income was the interest on the bank accounts and Richard's minimal business income.

{¶ 14} During the 2017 hearing, Richard again denied that he was aware of any

assets that belonged to Ellen prior to marriage, other than the assets that had been previously mentioned in the prior bench trial and our opinion (Ellen's house, her furniture, a motor vehicle, and her social security income). *Parrett*, 2017-Ohio-764, 85 N.E.3d 1067, at ¶ 18. Richard did indicate that he signed the 2005 joint tax return, which means that he would have been aware in 2006 (after the marriage) that Ellen had three bank accounts that had not been disclosed. However, Richard also stated that he had no idea, even at that time, of how much money was in these accounts.

{¶ 15} Wright did not present any evidence at the 2017 hearing indicating that Richard was aware, when he signed the antenuptial agreement, that Ellen owned an interest in two real estate properties, along with her son, or that Ellen was receiving payments from a business she co-owned with a prior, deceased husband. *Parrett* at ¶ 19.

{¶ 16} On May 31, 2017, the trial court filed a decision finding the antenuptial agreement was invalid. The court concluded that the only issue was disclosure, and that there was no evidence the parties had disclosed the nature and value of their assets to each other before signing the agreement. The court, therefore, found in Parrett's favor and gave him 35 days from the order to exercise or not exercise any legal, equitable, or statutory rights relative to Ellen's estate. Wright timely appealed from the court's decision.

## II. Validity of Antenuptial Agreement

{¶ 17} Construing Wright's "issues" as assignments of error, the First Assignment of Error states that:

Did Plaintiff-Appellee Knowingly Enter into the Antenuptial Agreement Freely Without Fraud, Duress, Coercion, or Overreaching?

{¶ 18} Under this assignment of error, Wright makes virtually no argument other than to claim, under *Fletcher*, 68 Ohio St. 3d 464, 628 N.E.2d 1343, that Parrett entered into the antenuptial agreement knowingly, without fraud, duress, coercion, or overreaching.

{¶ 19} We review a trial court's factual findings on the validity of antenuptial agreements for abuse of discretion. *Bisker v. Bisker*, 69 Ohio St.3d 608, 610, 635 N.E.2d 308 (1994). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The Supreme Court of Ohio has stressed that "most instances of abuse of discretion will result in decisions that are simply unreasonable * * *." *Id.* In addition, the court has said that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 20} "It is well settled in Ohio that public policy allows the enforcement of prenuptial agreements." *Fletcher*, 68 Ohio St.3d at 464, 628 N.E.2d 1343, citing *Gross v. Gross*, 11 Ohio St.3d 99, 464 N.E.2d 500 (1984). In *Gross,* the Supreme Court of Ohio set forth the following standard for evaluating prenuptial or antenuptial agreements:

Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms

do not promote or encourage divorce or profiteering by divorce.

*Gross* at paragraph two of the syllabus.[2]

**{¶ 21}** The only issue before the trial court, as noted in the court's decision, was whether there was "full disclosure, or full knowledge and understanding of the nature, value, and extent" of Ellen's property. *Gross* at paragraph two of the syllabus. The trial court found there was no disclosure of assets, and that is correct. Whether the agreement was entered into freely, without fraud or coercion, concerns a different part of the test from *Gross*. If the facts fail to support any part of the three-prong test, the rest of the test is irrelevant.

**{¶ 22}** In *Fletcher*, the Supreme Court also discussed a burden-shifting approach that had been applied in one of its prior decisions, which held that "an antenuptial agreement that creates a disproportionate allocation of property upon death shifts the burden of proving full disclosure onto the party claiming the validity of the contract." *Fletcher,* 68 Ohio St. 3d at 467, 628 N.E.2d 1343, citing *Juhasz v. Juhasz*, 134 Ohio St. 257, 16 N.E.2d 328 (1938). The court remarked that this burden-shifting approach is warranted, first, because of the fiduciary relationship between the parties, and second, because "antenuptial agreements negate the statutorily defined presumptive rights of a spouse to an equitable distribution of marital assets upon divorce." *Id.*, citing R.C. 3105.171.[3]

---

[2] The terms "prenuptial" and "antenuptial" are used interchangeably in Ohio cases.

[3] The same would be true of statutorily defined rights of a spouse under laws pertaining to descent and distribution. This is not to say parties are precluded from entering into premarital agreements concerning distribution of property on death. In *Gross*, the court noted that these types of agreements had long been allowed for purposes of distributing property at death. The court then decided to extend this ability to agreements for

{¶ 23} In view of these factors, the Supreme Court of Ohio concluded that the burden-shifting approach still applied and was good law. *Id.* The court also said that "[t]he burden of proving fraud, duress, coercion or overreaching, however, remains with the party challenging the agreement." *Id.*

{¶ 24} In *Fletcher*, the court considered only the coercion issue because: (1) the party seeking to uphold the agreement had adequately disclosed assets, and (2) the party seeking to void the agreement did not claim that the agreement promoted profiteering by divorce. *Fletcher*, 68 Ohio St.3d at 468, 628 N.E.2d 1343. Notably, concerning the disclosure of assets, the court stated that "[a]ttached to the antenuptial agreement was a financial disclosure statement, the accuracy of which [the party seeking to invalidate the agreement] does not dispute." *Id.*

{¶ 25} In *Hook v. Hook*, 69 Ohio St.2d 234, 431 N.E.2d 667 (1982), the Supreme Court of Ohio concluded that adequate disclosure had been made where the party seeking to uphold the antenuptial agreement disclosed assets "in excess" of $60,000. *Id.* at 237. The court reasoned that the actual assets did approximate the stated figure. *Id.* at 238.

{¶ 26} Subsequently, in *Zimmie v. Zimmie*, 8th Dist. Cuyahoga No. 43299, 1983 WL 5747, *11 (Feb. 3, 1983), *affirmed in part and reversed in part on other grounds*, 11 Ohio St.3d 94, 98, 464 N.E.2d 142 (1984), the Eighth District Court of Appeals set aside an antenuptial agreement. According to the court of appeals, the party seeking to uphold the antenuptial agreement "admitted that he never prepared a written statement of

disposition and division of property at the time of divorce. *Gross*, 11 Ohio St.3d at 103-108, 464 N.E.2d 500.

liabilities and assets," and stated that he told his wife-to-be "of the value of his business interests 'in a general way.' " *Id*. at *11.

{¶ 27} When the Supreme Court of Ohio considered the matter on further appeal, it found no error in the conclusion that there was no full disclosure. *Zimmie v. Zimmie*, 11 Ohio St.3d 94, 98, 464 N.E.2d 142 (1984). The court distinguished Hook because "the amount of relevant assets * * * [in *Hook*] approximated the stated figure." *Id*. at 98-99.

{¶ 28} In *Kinkle v. Kinkle*, 83 Ohio St.3d 150, 699 N.E.2d 41 (1998), the Supreme Court of Ohio upheld an antenuptial agreement involving an IRA that was specifically listed as the decedent's property in an exhibit to the antenuptial agreement. *Id*. at 153. Previously in *Gross*, the court had remarked that the elements of the disclosure requirement "would be satisfied either by the exhibiting of the attachment to the antenuptial agreement of a listing of the assets of the parties to the agreement, or alternatively a showing that there had been a full disclosure by other means." *Gross*, 11 Ohio St.3d at 105, 464 N.E.2d 500.

{¶ 29} In the case before us, there was no disclosure of the relevant assets by any of the methods outlined in *Gross*. Our prior decision noted that the trial court had incorrectly placed the burden on Parrett of proving that he was not properly informed. *Parrett*, 2017-Ohio-764, 85 N.E.3d 1067, at ¶ 16. However, we also stressed that "even if the trial court had properly placed the evidentiary burden on [Wright], the record affirmatively suggests that [Parrett] was not sufficiently appraised of Ellen's assets at the time that the parties entered into the antenuptial agreement." *Id*. at ¶ 17.

{¶ 30} Wright had an opportunity to present evidence on remand, but the pertinent

evidence after the hearing was the same as it was when we considered the initial appeal. Although Wright presented evidence of a tax return that was filed in 2006, this was after the parties married, and had no bearing on whether Parrett knew of the assets in question when the prenuptial agreement was signed. Furthermore, even if this had been otherwise, the tax return itself did not disclose any amounts in the bank accounts. More importantly, the tax return did not even mention the properties that Ellen owned with her son or the payments she received from the sale of a company she and her prior husband owned.

{¶ 31} As a final matter, the fact that Parrett failed to disclose a pension buy-out that he received in 1996 was irrelevant. As Parrett's attorney noted in the trial court, this might have been an issue if Parrett predeceased Ellen and his estate had attempted to uphold the antenuptial agreement. However, it had no bearing on the current situation, which solely involved whether Ellen's assets had been fully disclosed. Moreover, the issue was not whether either party committed fraud. In fact, the trial court specifically found no evidence of fraud. Doc. #23, p. 2.

{¶ 32} The trial court did state in a footnote that, under the circumstances, it would like to find a waiver of disclosure. *Id.* at p.3, fn.1. However, the court also correctly noted that this is not the law. *Id.*

{¶ 33} It may be potentially possible for parties to waive full disclosure of assets in a prenuptial agreement (an issue that is not before us), but we found little authority regarding this issue. In *Estate of Hohler v. Hohler*, 185 Ohio App.3d 420, 2009-Ohio-7013, 924 N.E.2d 419 (7th Dist.), the court of appeals commented in dicta about this point, but that was not the issue before the court. Specifically, the court was considering

whether the good cause exception to the work product doctrine applied to a surviving spouse's request for documents in the file of the decedent's attorney. *Id.* at ¶ 53. As one basis for the good cause exception, the surviving spouse asserted that she had not been provided full disclosure of the decedent's assets when she signed an antenuptial agreement. *Id.* at ¶ 54.

{¶ 34} In connection with this point, the court of appeals commented that:

This question is not as relevant to the legal file in this case as it could be in other cases. This is because here, the prenuptial agreement waived a formal recitation of assets and stated that each party was aware of the other's assets. Still, if the attorney has some communication concerning, for instance, the client's wish to avoid disclosing his net worth to his fiancée, then there may be good cause for disclosure of this type of work product.

However, it is not for the surviving spouse's counsel to determine whether the file contains any information relevant to her claim that the prenuptial agreement is invalid. That is a matter for the trial court.

*Hohler* at ¶ 54-55.

{¶ 35} Based on these facts, the case was remanded so the trial court could conduct an in-camera review and decide if the contested parts of the file were "relevant to the issue of full disclosure of assets and whether these specific items are necessary to establish the surviving spouse's claim." *Id.* at ¶ 56. Thus, the comments by the court of appeals about waiving disclosure in the agreement were essentially dicta at that point.[4]

---

[4] In a subsequent decision, the court of appeals upheld most of the trial court's decisions on remand about the work product exception, and found good cause for a number of documents to be turned over. *Estate of Hohler v. Hohler*, 197 Ohio App.3d 237, 2011-

{¶ 36} Nonetheless, even if such a waiver might be permissible if included within an antenuptial agreement, it would be irrelevant here, because the agreement did not make any statements about waiving full disclosure of assets.

{¶ 37} Based on the preceding discussion, we conclude that the trial court did not abuse its discretion in finding the antenuptial agreement invalid. Accordingly, the First Assignment of Error is overruled.


III.   Election to Take Against the Will

{¶ 38} Wright's two final points concern the same issue and will be considered together. These alleged assignments of error state as follows:

Did Plaintiff-Appellee Make His Election to Take Against the Will

Within Five Months From the Appointment of the Executor?

Did the Trial Court Err When Granting the Surviving Spouse

Additional Time to Make His Election?

{¶ 39} Under these assignments of error, Wright contends that Parrett failed to

---

Ohio-5469, 967 N.E.2d 219, ¶ 40.   Notably, despite the alleged waiver in the agreement, the court of appeals commented that the attorney's note, which recorded the fact that the decedent did not want to disclose his assets, would be "discoverable ordinary fact work product." *Id.* at ¶ 36.   The court further commented that the attorney's note went on "to state the attorney's opinion that the prenuptial agreement would likely not be enforceable absent full disclosure and indicates the decedent's desire to avoid disclosure regardless. Although this opinion work product receives heightened protection, the trial court properly ordered its disclosure. The facts that the attorney had serious concerns about enforceability absent a full disclosure of assets, that he told the decedent about this, and that the decedent nonetheless chose not to disclose his assets to his fiancée, are directly at issue in this litigation.   And because he is deceased, there is nowhere else to get this information." *Id.*   To the extent this comment implies any opinion, it is that the alleged waiver might not be enforceable.   Again, however, all these comments are dicta.   No ultimate resolution of this point is available, as the case has no further reported history.

make his election to take against the will within five months as required by R.C. 2106.25, that he failed to appear in person before the probate judge, as required by R.C. 2106.06, and that the trial court erred in granting him 35 days to exercise his rights as a surviving spouse.

{¶ 40} According to the complaint, Wright was appointed executor in Case No. 20150118. However, the case before us was filed as Case No. 20150118A. There is no indication in the record that these cases were consolidated, and the record in Case No. 20150018 is not before us. *See* Civ.R. 42(A)(1)(allowing cases to be consolidated if they involve common questions of law or fact).

{¶ 41} The record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court * * *." App. R. 9. We are not permitted to consider matters outside this record. *Stine v. Stine*, 2d Dist. Montgomery No. 14566, 1994 WL 730508, *2 (Dec. 30, 1994), citing *State v. Ishmail*, 54 Ohio St.2d 402, 405, 377 N.E.2d 500 (1978). Consequently, we cannot decide any issues pertaining to whether Parrett complied with requirements under R.C. 2106.06 and R.C. 2106.25.

{¶ 42} The third item that Wright mentions involves inclusion in the entry of a provision giving Parrett 35 days to exercise any statutory, equitable or legal rights relative to Ellen's estate. This entry does not specifically mention R.C. 2106.06, R.C. 2106.25, or any other particular right. Again, the record in the estate case is not before us, and we have no idea what particular legal, statutory, or equitable rights the trial court may have been contemplating, or what proceedings may or may not have occurred in

connection with the action involving the estate. The case before us involves a complaint to set aside the prenuptial agreement, and as was indicated, the trial court did not consolidate the actions. Although the trial court may have intended to do so by designating this proceeding as Case No. 20150118A, no formal order of consolidation appears in the record.

{¶ 43} As a final matter, to the extent we can consider the statement in the entry, we conclude that Wright waived any objections. Specifically, Parrett mentioned prior to the hearing that he would ask to be treated as the surviving spouse and elect to take against the will as our appellate opinion would appear to require and as had been reserved in the complaint he originally filed. Wright did not then, or thereafter, raise any objection to this contention, and, therefore, did not give the trial court an opportunity to consider any alleged error. Typically, errors other than those involving a court's subject matter jurisdiction may be waived. *See, e.g.*, *Louis A. Green, P.S. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2d Dist. Greene No. 05CA121, 2006-Ohio-1581, ¶ 19; *Holtz v. Holtz*, 2d Dist. Greene No. 2005-CA-43, 2006-Ohio-1812, ¶ 11. Wright has not argued that the trial court lacked jurisdiction to enter the order, and his failure to object in the trial court constitutes a waiver of any error.

{¶ 44} Accordingly, the second and third purported assignments of error are overruled.

IV. Conclusion

{¶ 45} All of Wright's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

David D. Herier
William D. West
Hon. Richard P. Carey